34 U.S. 329 (____)
9 Pet. 329
JOSEPH D. BEERS, WILLIAM L. BOOTH AND ISAAC R. ST JOHN, PLAINTIFFS IN ERROR
v.
RICHARD HAUGHTON.
Supreme Court of United States.

*333 The case was submitted to the court on printed arguments, by Mr Elisha W. Chester, Mr D.J. Caswell, and Mr Henry Star, for the plaintiffs in error; and by Mr Charles Fox, for the defendant.
Mr FOX, for the defendant.
*355 Mr Justice STORY delivered the opinion of the Court.
This is a writ of error to the judgment of the circuit court for the district of Ohio.
*356 The material facts are these. In June 1830, the plaintiffs in error (who are citizens of New York) brought an action of assumpsit in the circuit court of Ohio, against one Joseph Harris and Cornelius V. Harris, and at the December term of the court, recovered judgment for 2818 dollars and 86 cents, and costs. In this action the defendant in error became special bail by recognizance, viz., that the Harris's should pay and satisfy the judgment recovered against them, or render themselves into the custody of the marshal of the district of Ohio. In October 1831, a writ of capias ad satisfaciendum was issued upon the same judgment, directed to the marshal; who, at the December term 1831, returned that the Harris's were not to be found. At the same term the circuit court adopted the following rule, "that if a defendant, upon a capias, does not give sufficient appearance bail, he shall be committed to prison, to remain until discharged by due course of law. But under neither mesne nor final process, shall any individual be kept imprisoned, who, under the insolvent law of the state, has for such demand been released from inprisonment." In February 1831, Cornelius V. Harris was duly discharged from imprisonment for all his debts, under the insolvent law of Ohio, passed in 1831; and in February 1832, Joseph Harris was in like manner discharged. In December 1832, the plaintiffs in error commenced the present action of debt, upon the recognizance of bail, against the defendant in error; stating, in the declaration, the original judgment, the defendant becoming special bail, and the return of the execution "Not found." The defendant, among other pleas, pleaded the discharge of the Harris's under the insolvent law of Ohio of 1831, and the rule of the circuit court, above mentioned, in bar of the action. The plaintiffs demurred to the plea, and, upon joinder in demurrer, the circuit court gave judgment for the defendant; and the present writ of error is brought to revise that judgment.
The question now before this court is, whether the plea contains a substantial defence to the action of debt brought upon the recognizance of special bail. In order to clear the case of embarrassment from collateral matters, it may be proper to state, that the recognizance of special bail being a part of the proceedings on a suit, and subject to the regulation of the court, the nature, extent and limitations of the responsibility *357 created thereby, are to be decided, not by a mere examination of the terms of the instrument, but by a reference to the known rules of the court and the principles of law applicable thereto. Whatever in the sense of those rules and principles will constitute a discharge of the liability of the special bail, must be deemed included within the purview of the instrument, as much as if it were expressly stated. Now, by the rules of the circuit court of Ohio, adopted as early as January term 1808, the liability of special bail was provided for and limited; and it was declared, that special bail may surrender their principal at any time before or after judgment against the principal; provided such surrender shall be before a return of a scire facias executed, or a second scire facias nihil, against the bail. And this in fact constituted a part of the law of Ohio at the time when the present recognizance was given; for in the Revised Laws of 1823, 1824, (22d vol. of Ohio Laws 58) it is enacted that, subsequent to the return of the capias ad respondendum, the defendant may render himself or be rendered in discharge of his bail, either before or after judgment; provided such render be made at or before the appearance day of the first scire facias against the bail returned scire feci, or of the second scire facias returned nihil, or of the capias ad respondendum or summons in an action of debt against the bail or his recognizance returned served; and not after. This act was in force at the time of the passage of the act of congress of the 19th of May 1828, ch. 68, and must, therefore, be deemed as a part of the "modes of proceeding" in suits, to have been adopted by it. So that the surrender of the principal by the special bail within the time thus prescribed, is not a mere matter of favour of the court, but is strictly a matter of legal right.
And this constitutes an answer to that part of the argument at the bar, founded upon the notion, that by the return of the capias ad satisfaciendum, the plaintiffs had acquired a fixed and absolute right against the bail; not to be affected by any rules of the court. So far from the right being absolute, it was vested sub modo only, and liable to be defeated in the events prescribed by the prior rules of the court, and the statute of Ohio above referred to. It is true, that it has been said that by a return of non est inventus on a capias ad satisfaciendum, *358 the bail are fixed; but this language is not strictly accurate; even in courts acting professedly under the common law, and independently of statute. Lord Ellenborough, in Mannin v. Partridge, 14 East's Rep. 599, remarked that "bail were to some purposes said to be fixed by the return of non est inventus upon the capias ad satisfaciendum; but if they have, by the indulgence of the court, time to render the principal until the appearance day of the last scire facias against them, and which they have the capacity of using, they cannot be considered as completely and definitively fixed till that period." And so much are the proceedings against bail deemed a matter subject to the regulation and practice of the court, that the court will not hesitate to relieve them in a summary manner, and direct an exoneretur to be entered in such cases of indulgence, as well as in cases of strict right. But there is this distinction: that where the bail were entitled to be discharged, ex debito justitiæ, they may not only apply for an exoneretur by way of summary proceeding; but they may plead the matter as a bar to a suit in their defence. But where the discharge is matter of indulgence only, the application is to the discretion of the court, and an exoneretur cannot be insisted on except by way of motion.
And this leads us to the remark, that where the party is, by the practice of the court, entitled to an exoneretur without a positive surrender of the principal, according to the terms of the recognizance, he is, a fortiori, entitled to insist on it by way of defence, where he is entitled, ex debito justitiæ, to surrender the principal. Now, the doctrine is clearly established, that where the principal would be entitled to an immediate and unconditional discharge, if he had been surrendered, there the bail are entitled to relief by entering an exoneretur, without any surrender. This was decided in Mannin v. Partridge, 14 East 599; Boggs v. Teackle, 5 Binn. Rep. 332; and Olcott v. Lilly, 4 Johns. Rep. 407. And, a fortiori, this doctrine must apply where the law prohibits the party from being imprisoned at all; or where, by the positive operation of law, a surrender is prevented. So that there can be no doubt, that the present plea is a good bar to the suit, notwithstanding there has been no surrender; if by law the principal could not, upon such surrender, have been imprisoned at all.
*359 This constitutes the turning point of the case, and to the consideration of it we shall now proceed. In the first place, there is no doubt, that the legislature of Ohio possessed full constitutional authority to pass laws whereby insolvent debtors should be released, or protected from arrest or imprisonment of their persons on any action for any debt or demand due by them. The right to imprison constitutes no part of the contract; and a discharge of the person of the party from imprisonment, does not impair the obligation of the contract, but leaves it in full force against his property and effects. This was clearly settled by this court in the cases of Sturges v. Crowninshield, 4 Wheat. Rep. 200; and Mason v. Haile, 12 Wheat. Rep. 370. In the next place, it is equally clear, that such state laws have no operation, proprio vigore, upon the process or proceedings in the courts of the United States; for the reasons so forcibly stated by Mr Justice Johnson, in delivering the final opinion of the court in Ogden v. Saunders, 12 Wheat. Rep. 213; and by Mr Chief Justice Marshall in delivering the opinion of the court in Wayman v. Southard, 10 Wheat. Rep. 1; and by Mr Justice Thompson in delivering the like opinion in the Bank of the United States v. Halstead, 10 Wheat. Rep. 51.
State laws cannot control the exercise of the powers of the national government, or in any manner limit or affect the operation of the process or proceedings in the national courts. The whole efficacy of such laws in the courts of the United States, depends upon the enactments of congress. So far as they are adopted by congress they are obligatory. Beyond this, they have no controlling influence. Congress may adopt such state laws directly by a substantive enactment, or they may confide the authority to adopt them to the courts of the United States. Examples of both sorts exist in the national legislation. The process act of 1789, ch. 21, expressly adopted the forms of writs and modes of process of the state courts, in suits at common law. The act of 1792, ch. 36, permanently continued the forms of writs, executions and other process, and the forms and modes of proceeding in suits at common law, then in use in the courts of the United States, under the process act of 1789; but with this remarkable difference, that they were subject to such alterations and additions as the said *360 courts respectively should, in their discretion, deem expedient: or to such regulations as the supreme court of the United States should think proper, from time to time, by rule to prescribe to any circuit or district court concerning the same. The constitutional validity and extent of the power thus given to the courts of the United States, to make alterations and additions in the process, as well as in the modes of proceeding in suits, was fully considered by this court in the cases of Wayman v. Southard, 10 Wheat. Rep. 1; and the Bank of the United States v. Halstead, 10 Wheat. Rep. 51. It was there held, that this delegation of power by congress was perfectly constitutional; that the power to alter and add to the process and modes of proceeding in a suit, embraced the whole progress of such suit, and every transaction in it from its commencement to its termination, and until the judgment should be satisfied; and that it authorized the courts to prescribe and regulate the conduct of the officer in the execution of final process, in giving effect to its judgment. And it was emphatically laid down, that "a general superintendence over this subject seems to be properly within the judicial province, and has always been so considered;" and that "this provision enables the courts of the union to make such improvements in its forms and modes of proceeding as experience may suggest; and especially to adopt such state laws on this subject, as might vary to advantage the forms and modes of proceeding, which prevailed in September 1789." The result of this doctrine, as practically expounded or applied in the case of the Bank of the United States v. Halstead, is, that the courts may, by their rules, not only alter the forms, but the effect and operation of the process, whether mesne or final, and the modes of proceeding under it; so that it may reach property not liable, in 1789, by the state laws to be taken in execution, or may exempt property, which was not then exempted, but has been exempted by subsequent state laws.
If, therefore, the present case stood upon the mere ground of the authority conferred on the courts of the United States by the acts of 1789 and 1792, there would seem to be no solid objection to the authority by the circuit court of Ohio to make the rule referred to in the pleadings. It is no more than a regulation of the modes of proceeding in a suit, in order to conform *361 to the state law of Ohio, passed in 1831, for the relief of insolvent debtors. A regulation of the proceedings upon bail bonds and recognizances, and prescribing the conduct of the marshal in matters touching the same; seems to be as completely within the scope of the authority, as any which could be selected.
But in fact the present case does not depend upon the provisions of the acts of 1789 or 1792; but it is directly within and governed by the process act of the 19th of May 1828, ch. 68. That act in the first section declares, that the forms of mesne process, and the forms and modes of proceeding in suits at common law in the courts of the United States, held in states admitted into the union since 1789, (as the state of Ohio has been) shall be the same in each of the said states, respectively, as were then used in the highest court of original and general jurisdiction in the same; subject to such alterations and additions as the said courts of the United States, respectively, shall, in their discretion, deem expedient, or to such regulations as the supreme court shall think proper from time to time, by rules, to prescribe to any circuit or district court concerning the same. The third section declares, that writs of execution and other final process issued on judgments and decrees rendered in any courts of the United States, and "the proceedings thereupon," shall be the same in each state, respectively, as are now used in the courts of such state, &c. &c. Provided, however, that it shall be in the power of the courts, if they see fit in their discretion, by rules of court, so far to alter final process in such courts, as to conform the same to any change which may be adopted by the legislature of the respective state, for the state courts.
This act was made after the decisions in Wayman v. Southard, and the Bank of the United States v. Halstead, 10 Wheat. 1 and 51, and was manifestly intended to confirm the construction given in those cases to the acts of 1789 and 1792, and to continue the like powers in the courts to alter and add to the processes whether mesne or final, and to regulate the modes of proceedings in suits and upon processes, as had been held to exist under those acts. The language employed seems to have been designed to put at rest all future doubts upon the subject. But the material consideration now to be taken notice of, is *362 that the act of 1828 expressly adopts the mesne processes and modes of proceeding in suits at common law, then existing in the highest state courts under the state laws; which of course included all the regulations of the state laws as to bail, and exemptions of the party from arrest and imprisonment. In regard also to writs of execution and other final process, and "the proceedings thereupon," it adopts an equally comprehensive language, and declares that they shall be the same as were then used in the courts of the state. Now, the words "the proceedings on the writs of execution and other final process," must, from their very import, be construed to include all the laws which regulate the rights, duties and conduct of officers in the service of such process, according to its exigency, upon the person or property of the execution debtor, and also all the exemptions from arrest or imprisonment under such process created by those laws.
We are then led to the inquiry, what were the laws of Ohio in regard to insolvent debtors at the time of the passage of the act of 1828. By the insolvent act of Ohio, of the 23d of February 1824 (Laws of Ohio, Revision of 1824, vol. 22, sect. 8, 9, p. 327, 328), which continued in force until it was repealed and superseded by the insolvent act of 1831, it is provided, that the certificate of the commissioner of insolvents, duly obtained, shall entitle the insolvent, if in custody upon mesne or final process in any civil action, to an immediate discharge therefrom, upon his complying with the requisites of the act. And it is further provided, that the final certificate of the court of common pleas, duly obtained, shall protect the insolvent for ever after from imprisonment for any suit or cause of action, debt or demand mentioned in the schedule given in under the insolvent proceedings; and a penalty is also inflicted upon any sheriff or other officer, who should knowingly or wilfully arrest any person contrary to this provision. The act of 1831 (Laws of Ohio, Revision of 1831, vol. 29, sec. 21, 36, p. 333, 336) contains a similar provision, protecting the insolvent under like circumstances from imprisonment, and making the sheriff or other officer, who shall arrest him contrary to the act, liable to an action of trespass. Now, the repeal of the act of 1824, by the act of 1831, could have no legal effect to change the existing forms of mesne or final process, or the modes of proceeding thereon in the courts *363 of the United States, as adopted by congress, or to vary the powers of the same courts in relation thereto; but the same remained in full force, as if no such repeal had taken place. The rule of the circuit court is in perfect coincidence with the state laws existing in 1828; and if it were not, the circuit court had authority, by the very provisions of the act of 1828, to make such a rule, as a regulation of the proceedings upon final process, so as to conform the same to those of the state laws on the same subject.
Upon these grounds, without going into a more elaborate review of the principles applicable to the case, we are of opinion that the judgment of the circuit court was right; and that it ought to be affirmed with costs.
Mr Justice THOMPSON, dissenting.
This is the first time this court has been called upon to give a construction to the act of congress of the 19th of May 1828, Sess. Laws 56. And the rules and principles adopted by the circuit court, and which appear to be sanctioned by this court, when carried out to their full extent, appear to me to be such an innovation, upon what has been heretofore understood to be the law by which the courts of the United States were to be governed, as could not have been intended by congress by the act of 1828. It is giving to the courts the power, by rule of court, to introduce and enforce state insolvent systems.
It authorizes the courts to abolish all remedy which a creditor may have against the body of his debtor who has been discharged under a state insolvent law. And if the courts have this power, they have the same power over a fieri facias, and to exempt all property acquired after the discharge of the insolvent from the payment of his antecedent debts; if such be the state law. The act is general, extending to writs of execution, and all other final process. And in addition to this, it alters the whole law of remedy against bail, in such cases. A capias ad satisfaciendum against the principal is an indispensable preliminary step to a prosecution against the bail; and if the court has a right to order, that no capias ad satisfaciendum shall be issued, it is taking from the creditor all remedy against the bail. To say that an execution may be taken out, but shall not be executed upon the party, is a mere mockery of *364 justice. The constitutionality of the insolvent law of Ohio is not drawn in question; and whether as a measure of policy, it is not wise to abolish imprisonment for debt, is not a question which we are called upon to decide.
As between the citizens of Ohio, and in their own courts, they have full power to adopt such course in this respect as the wisdom of their legislature may dictate. But the present is a question between the citizens of that state, and the citizens of another state. And that made the great and leading distinction adopted by this court in the case of Saunders v. Ogden, 12 Wheaton 531. And, indeed, it was the very point upon which that cause turned. And if the practical operation of the act of 1828 is to be what is now sanctioned by this court, it is certainly overruling that decision. So far as that goes, I can have no particular objection, as I was in the minority in that case. But this case involves other important considerations. It is an action brought by citizens of the state of New York, against citizens of the state of Ohio, upon a recognizance of bail. The pleadings in the cause terminated in a demurrer to the plea; and the judgment of the court sustained the validity of the plea, and defeated the plaintiffs' right of recovery. A brief statement of the facts as disclosed by the record will aid in a right understanding of the questions that are presented for consideration. The defendant Richard Haughton became special bail for Joseph Harris and Cornelius V. Harris in a suit brought against them by the plaintiffs in this cause. On the 12th day of October 1831, a capias ad satisfaciendum was issued against them on the judgment which had been recovered for 2846 dollars 56 cents. This capias ad satisfaciendum was returned Not found, at the December term 1831 of the circuit court. This execution, it is to be presumed, was returnable on the first day of the term, which is according to the ordinary course of proceedings.
At the same December term 1831, the rule of court, set out in the plea was adopted; which orders and directs, that no person, either under mesne or final process, shall be kept in prison, who, under the insolvent law of the state, has for such demand been released from imprisonment. The plea alleges, that Cornelius V. Harris, one of the defendants in the original suit, was, at the February term 1831 of the court of common *365 pleas for Hamilton county, in the state of Ohio, ordered and adjudged to be for ever thereafter protected from arrest or imprisonment for any civil action, or debt, or demand, in the schedule of his debts delivered to the commissioner of insolvents; among which was the judgment above mentioned. The plea also alleges, that a like discharge was given to the other defendant, Joseph Harris, at the February term 1832 of the same court. So that it appears, that the rule of court, and the discharge of one of the defendants, took place after the bail was fixed in law by the return "not found" upon the ca. sa. against the defendants in the original suit. As against Joseph Harris therefore, a retrospective effect has been given to his discharge, and a vested legal right of the plaintiff thereby taken away, upon this demurrer to a special plea, founded upon a particular rule of court specified in the plea; it cannot, I should think, be claimed, that other rules of court have the notoriety of public laws, which the court is bound judicially to know and notice. Was the bail under these circumstances discharged, and could such matters be set up by way of plea in bar to the present action against the bail, are the questions to be considered?
In the case of Saunders v. Ogden, the parties, as in the present case, were citizens of different states; and the decision of the court was, that as between parties of different states, the state insolvent laws had no application. Mr Justice Johnson, who delivered the opinion of the court, uses very strong language on this point, and which cannot be misunderstood. "All this mockery of justice," says he, "and the jealousies, recriminations and perhaps retaliations which might grow out of it, are avoided, if the power of the states over contracts, after they become the subject exclusively of judicial cognizance, is limited to the controversies of their own citizens. And it does appear to me almost incontrovertible, that the states cannot proceed one step farther, without exercising a power incompatible with the acknowledged powers of other states, or of the United States, and with the rights of the citizens of other states. Every bankrupt or insolvent system in the world must partake of the character of a judicial investigation. Parties whose rights are to be affected are entitled to a hearing. But on what principle can a citizen of another state be forced into the courts of a state for this investigation? The judgment to be passed is to *366 prostrate his rights; and on the subject of these rights the constitution exempts him from the jurisdiction of the state tribunals, without regard to the place where the contract originated. In the only tribunal to which he owes allegiance, the state insolvent or bankrupt laws cannot be carried into effect. They have a law of their own on this subject: act of 1800, 3d vol. L.U.S. 301. The constitution has constituted courts professedly independent of state power in their judicial course; and yet the judgments of those courts are to be vacated, and their prisoners set at large under the power of the state courts, or of the state laws, without the possibility of protecting themselves from its exercise. I cannot acquiesce in an incompatibility so obvious. No one has ever imagined that a prisoner in confinement, under process from the courts of the United States, could avail himself of the insolvent laws of the state in which the court sits. And the reason is, that those laws are municipal and peculiar, and appertaining exclusively to the exercise of state power, in that sphere in which it is sovereign; that is, between its own citizens, between suitors subject to state power exclusively, in their controversies between themselves." And in conclusion, he sums up the argument by saying, that "when in the exercise of that power" (passing insolvent laws), "the states pass beyond their own limits, and the rights of their own citizens, and act upon the rights of citizens of other states; then arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other states, and of the constitution of the United States."
I have been thus particular in quoting the very language of the court, that it may speak for itself. And that it was adopted in its fullest extent is evident, by what fell from the court in the case of Boyle v. Zacharie and Turner, 6 Peters 643. "The ultimate opinion," say the court, "delivered by Mr Justice Johnson in the case of Ogden v. Saunders, was concurred in and adopted by the three judges who were in the minority upon the general question of the constitutionality of state insolvent laws, so largely discussed in that case. It is proper to make this remark, in order to remove an erroneous impression of the bar, that it was his single opinion, and not of the three other *367 judges who concurred in the judgment. So far, then, as decisions upon the subject of state insolvent laws have been made by this court, they are to be deemed final and conclusive." The decision, in that case, turned exclusively upon the point, that state insolvent laws did not apply to suitors in the courts of the United States. And the emphatic language is used, "no one has ever imagined that a prisoner in confinement under process from the courts of the United States, could avail himself of the insolvent laws of the state in which the court sits." Apply this principle to the case now before the court. A capias ad satisfaciendum was in the hands of the marshal against the Harris's, the defendants in the original suit. Suppose the marshal had arrested them, (as was his duty to do, if they could be found) and put them in confinement. No one, say the court, could imagine, that they could avail themselves of the state insolvent law. But that is the very thing which the plea in this case does set up, under the authority of the rule of court, that no one shall be kept imprisoned who has been discharged under the insolvent law of the state; and it is the very thing that has proved available, to deprive the plaintiffs of a recovery in this case.
The case of Boyle v. Zacharie and Turner, was decided in the year 1832; and the enacting clause of the act of congress of 1828, could not have been supposed to change the principles adopted in Ogden and Saunders. If that act is to govern and control the case now before the court, it must be by virtue of the rule which has been adopted by the circuit court of Ohio. What is the law of 1828? It declares, "that writs of execution and other final process, issued on judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same, except their style, in each state, respectively, as are now used in the courts of such state, &c. provided, however, that it shall be in the power of the courts, if they see fit in their discretion, by rules of court, so far to alter the final process in said courts, as to conform the same to any change which may be adopted by the legislatures of the respective states for the state courts." A capias ad satisfaciendum was an execution in use in the courts of the state of Ohio, in the year 1828, when the act in question was passed. It was, therefore, adopted as a writ to be used in the courts of the United States.
*368 But it is said that the act adopts, also, the proceedings thereupon. It does so. But what is to be understood by proceedings? Can this in any just sense be satisfied by prohibiting all proceedings on the execution? Proceedings, both in common parlance and in legal acceptation, imply action, procedure, prosecution. And such is the explanation given to the term proceedings, in the case of Wayman v. Southard, 10 Wheaton 1. "It is applicable," say the court, "to writs and executions, and is applicable to every step taken in a cause. It indicates the progressive course of the business, from its commencement to its termination." If it is a progressive course, it must be advancing; and cannot be satisfied by remaining at rest. In the cases of Wayman v. Southard, and The Bank of The United States v. Halstead, 10 Wheaton, this term proceedings was applied to the mode and manner of executing the execution in the progress of obtaining satisfaction; and the power of the court under the process act of 1792, to alter and add to the execution by extending it to lands. But no part of those cases contains an intimation, that proceedings to obtain satisfaction, implies or warrants an arrest and stopping all execution whatever of the process. If the enacting clause in this act does not forbid the execution of the capias ad satisfaciendum, as it certainly does not, could it be done by a rule of court under the proviso? I think it could not. The proviso does not authorize any rule relative to the proceedings in the cause. The term is not used at all. It only authorizes the court so far to alter final process, as to conform the same to that used in the state courts.
The rule set up in this plea does not make any alteration, whatever, in the execution. That remains the same precisely as it was before; and it only forbids the effect and operation of it. And if the rule is to be considered a part of the execution, and to be taken as if incorporated in the body of the writ, it would present a very singular process, commanding the marshal to take the body of the defendant, but forbidding him to keep the prisoner in confinement. Such incongruity cannot be attributed to this proviso. The rule, I think, is not authorized by this statute, and especially as it was adopted after the bail was fixed in law, by the return Not found, upon the capias ad satisfaciendum issued against the principals. That such a *369 return fixes the bail, is a settled rule of the common law. Courts have, ex gratia, extended the right to surrender, until the return of the writ or process against the bail: and perhaps in some instances, the right to surrender has been extended to a later period. But the contingency of not being able to make the surrender after the return of the capias ad satisfaciendum not found, is at the risk of the bail. And the relief of the bail in such cases is on motion, addressed to the favour of the court; and relief is granted, upon such terms as the circumstances of the case will warrant; and always upon payment of the cost of the suit against the bail. No stronger case upon this point can be put, than that of Davison v. Taylor, decided in this court, 12 Wheaton 604. "This," say the court, "is a case of bail, and is to be decided by the principles of English law, which, the case finds, constitute the law and practice of Maryland on the subject. According to these principles, the allowance of the bail to surrender the principal after the return of a capias ad satisfaciendum, is considered as matter of favour and indulgence, and not of right; and is regulated by the acknowledged practice of the court. To many purposes the bail is considered as fixed by the return of the capias ad satisfaciendum; but the court allow the bail to surrender the principal, within a limited period after the return of the scire facias against them; as matter of favour, and not as matter pleadable in bar. In certain cases even a formal surrender has not been required; when the principal was still living and capable of being surrendered, and an exoneretur could be entered and the principal discharged immediately on the surrender: but the rule has never been applied to cases where the principal dies before the return of the scire facias. In such a case the bail is considered as fixed by the return of the capias ad satisfaciendum; and his death afterwards and before the return of the scire facias, does not entitle the bail to an exoneretur: the plea is therefore bad."
This case would seem to put at rest the question as to the manner in which the bail is to avail himself of any matter, which entitles him to relief, when application is made after the return of the capias ad satisfaciendum,  that it must be by motion and not by plea in bar. But if this was pleadable, the plea now in question is defective. It does not allege a surrender of the principals, or that an exoneretur has been entered.
*370 It may be admitted that the bail would have been entitled to relief, on motion to the court for that purpose. But this will not sustain the plea, according to the doctrine of the case just referred to, of Davison v. Taylor. But it may be questionable whether the bail would have been relieved in this case on motion. Such an application is seldom, if ever, granted; unless the matter upon which the motion is founded arose before the bail is fixed in law; viz. before the return of the capias ad satisfaciendum. 1 Caines's Rep. 10. In this case one of the principals was not discharged, until several months after the return of the capias ad satisfaciendum. And this appears upon the record. In the case of Olcott v. Lilly, 4 Johns, 408, Chief Justice Kent says, there is no case in which the death of the principal, after the return and filing of the capias ad satisfaciendum, has been allowed as ground for the relief of the bail. All the cases agree that after the bail are fixed, de jure, they take the risk of the death of the principal. The attempt for relief has frequently been made, and as often denied. That the time which is allowed the bail ex gratia, is at their peril, and they must surrender. That there are many cases where the bail have been relieved on motion. But, in these cases, the event upon which the bail has been relieved happened before the bail became fixed. That, in cases of insolvency, time has been allowed the bail ex gratia to surrender, to prevent circuity of action. But there is no intimation that such insolvency could be pleaded in bar. Indeed its being allowed ex gratia, according to the language of all the cases, is conclusive to show that it could not be pleaded as a legal discharge of the bail. In the case of Chatham v. Lewis, 2 Johns. 103, the surrender was within eight days after the return of the writ against the bail, and the court ordered an exoneretur; saying that, technically speaking, such surrender cannot be pleaded, and so is not de jure. The relief is on motion and not by plea, and the court always requires the costs in the suit or the recognizance to be paid. The same doctrine is fully settled in the English courts. In the case of Donally v. Dunn, 1 Bos. and Pul. 448, the position is laid down broadly, that bail cannot plead the bankruptcy and certificate of their principal in their own discharge. Lord Eldon, however, observed that they did not mean to preclude any application for summary relief on the part of the *371 bail. The same case came again before the court, after leave to amend the plea had been obtained, 2 Bos. and Pul. 45, and was very analogous in its circumstances to the one now before this court. It was an action of debt on recognizance of bail; and the defendant pleaded the bankruptcy of the principal, very circumstantially. To which there was a general demurrer and joinder.
In support of the plea it was contended, as it has been in the case now before the court, that if the bankruptcy and certificate was a legal discharge of the principal, it was also a legal discharge of the bail, and if so may be pleaded. To this it was answered, that the plea of bankruptcy could only be interposed by the bankrupt himself: and the bail, if entitled to any relief, must obtain it, by application to the summary jurisdiction of the court. And this principle was sanctioned by the court. Lord Eldon said, We do not mean to preclude any application for summary relief on the part of the bail. But on this record judgment must be given for the plaintiff. That the plea of bankruptcy is given to the bankrupt, to be made use of as the means of discharging himself if he please. But there may be cases in which the bankrupt may not choose to make use of his certificate. And he cannot, through the medium of his bail, be obliged to make use of his certificate, whether he will or not. It is the duty of the bail under their recognizance to surrender the bankrupt; and it remains with the bankrupt himself to determine whether any use shall be made of the certificate. And Mr Justice Buller observed, that it is of importance to the public and to the profession, to put an end to attempts to introduce upon the record questions of practice, which cannot be considered as legal defences; but which belong to what may be called the equity side of the court. This action is brought for a legal demand, arising upon a debt of record, and the defendant is called upon to state a legal defence upon record, and not merely to say he has equity in his favour. He must either show a legal impossibility to perform the condition of the recognizance, or state something that will discharge him; and he has done neither. These cases are abundantly sufficient to show that it is a well settled rule of law, that the bail cannot set up by plea in bar, the matter contained in the plea now in question. But if *372 available at all, it must be by motion. It is true, as is said in Mannin v. Partridge, 14 East 599, the bail are not completely and definitively fixed, by the return of the capias ad satisfaciendum. They have, by the indulgence of the court, time to surrender the principal, until the appearance day of the last scire facias. But this was an application for relief on motion, and addressed to the favour and indulgence of the court; and no intimation is given that it might be pleaded as matter of right. And it is not, I believe, pretended, that any rule of court had or could authorize such matter to be pleaded. The relief of bail by the surrender of their principal is matter of practice, and may be regulated by rules of court. And the acts of the legislature of Ohio, or the decisions of their courts on this subject, can have no binding force on the courts of the United States, or regulate their practice, any farther than they have been adopted by the court. And I do not understand that any rule of the circuit court professes to do more than extend the time for the surrender, until the return day of a second scire facias against the bail. But the mode of relief after the bail are fixed in law, must be by an application to the favour of the court; and cannot, if the cases to which I have referred be law, be pleaded in bar. The cases of Wayman v. Southard, and the Bank of the United States v. Halstead, 10 Wheaton, establish, most clearly and explicitly, that a state legislature cannot, by virtue of any original, inherent power they have, arrest or control the proceedings of the courts of the United States; or regulate the conduct of the officers of the United States in the discharge of their duty. The doctrine of this court always has been, that executions issuing out of the courts of the United States, are not controlled or controllable in their general operation and effect, by any collateral regulations which the state laws have imposed on the state courts to govern them. That such regulations are exclusively addressed to the state tribunals, and have no efficacy on the courts of the United States; unless adopted under the authority of the laws of the United States. And it appears to me, that by no sound and just construction of the act of congress of 1828, can the insolvent law of Ohio be considered as adopted by it; or as giving the circuit court the power to adopt it by rule of court; without overruling the case of Saunders v. Ogden; *373 nor without giving to the term proceedings, a meaning not warranted in common parlance, or in legal acceptation. But whatever might have been the power of the circuit court to relieve the bail in this case, on motion; if such application had been made; I feel great confidence in saying, that the bail cannot avail himself of the matters set up, by way of plea in bar to the action; and that the plaintiff was entitled to judgment upon the demurrer.
Mr Justice BALDWIN, dissenting.
As I fully concur in opinion with Judge Thompson, in all the views which he has taken of this case, it would be unnecessary for me to do more than express such concurrence; but the course of adjudication which has prevailed in the circuit court of Pennsylvania, on the subject of the insolvent laws of the states of this union, since April 1831; renders it indispensable for me to do more than declare my dissent from the opinion of the court. In the case of Woodhull and Davis v. Wagner, the defendant had been discharged by the insolvent law of Pennsylvania; after which he was arrested on a capias ad satisfaciendum from the circuit court, on a judgment obtained there. An application was made for his discharge, which was refused by the court; and he was remanded to custody, on the ground, that the debt, being payable in New York, and the plaintiffs citizens of that state when the debt was contracted and when the defendant was discharged by the insolvent law of Pennsylvania; such discharge was wholly inoperative. Similar cases have since occurred in which that court have held the law to be settled, and do not suffer the question to be argued.
In coming to, and for four years adhering to this course of adjudication, the judges of that court did not act on their own opinion; they considered the law to have been settled by the final judgment of this court in Ogden v. Saunders, 12 Wheaton 369; and the case of Shaw v. Robbins, referred to in the note to the case: and as the rule on which we proceeded was laid down by the authority of this court, we felt bound to observe and enforce it, whatever may have been our views of it as individual judges, or as a circuit court.
But in so doing, we did not consider it as a question of practice, *374 the form and mode of proceeding in court, or the mere execution of its final process. We examined it as one of constitutional law, directly involving the power of the states, to affect in any manner the rights of citizens of other states, in enforcing the performance of contracts in the circuit courts of the United States. And when we found that the third proposition laid down by Judge Johnson in Ogden v. Saunders, was considered as the established rule of this court; we at once submitted to its obligation as a guide to our judgment. The declaration of Judge Story, in delivering the opinion of the court in Boyle v. Zachary and Turner, 6 Peters 643, was a direct affirmance of the proposition of Judge Johnson; from which no member of the court dissented; nor from the concluding paragraph of the sentence  "So far then as decisions upon the subject of state insolvent laws have been made by this court, they are to be deemed final and conclusive."
The third proposition of Judge Johnson, thus adopted as a principle of constitutional law, finally and conclusively, is this: 
"But when, in the exercise of that power, the states pass beyond their ownlimits and the rights of their own citizens, and act upon the rights of citizens of other states; then arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other states and with the constitution of the United States."
A more important principle of constitutional law was never presented for the consideration of any judicial tribunal: and when, three years since, it was solemnly declared by this court that it was to be deemed as one which had become by its decisions final and conclusive; the circuit court of Pennsylvania did not feel at liberty to depart from it, but followed it as a prescribed rule enjoined on their observance by paramount authority; deeming it their judicial duty. That court could not consider, that the effect of a discharge by the insolvent law of Pennsylvania, on a debt due to a citizen of New York, and payable there, depended on a rule of court which it could make and unmake, at its discretion, from time to time, as a matter of practice.
With the cases of Ogden v. Saunders, Shaw v. Robbins, and Boyle v. Zachary, before them, they could not judicially *375 consider the question in any other aspect, than that so solemnly declared by this court; presenting a conflict of sovereign power, a collision with the judicial powers of the union, and an exercise of a state power incompatible with the rights of other states, and with the constitution of the United States. When the final and conclusive decisions of this court had declared the law obnoxious to such objections, the circuit court had but one course to pursue  to declare it inoperative by the supreme law of the land; which is as imperative on courts as suitors, not as a guide to their discretion, but as the standard rule to direct their judgment.
A circuit court may be holden by a judge of this court, or in his absence by the district judge alone; and either has the same power to make rules of court, as both together. The question is simply this. The constitution  the rights of other states  the judicial power granted to the United States as declared by this court, are violated by a state insolvent law. Yet a circuit court adopts, by a rule of its own, that state law as the rule of its decision, and renders a judgment according to its provisions; and this is the case before us. The plaintiffs are citizens of New York; the defendants citizens of Ohio, sued in the circuit court of that district; by whose judgment the defendant is released from the obligation of his contract, as special bail; solely by the operation of a law of Ohio adopted by a rule of court, when, in the absence of such a law, he would be absolutely bound to pay the debt demanded from him. That judgment is now affirmed by this court, on their construction of acts of congress, whose titles are, to regulate processes in the courts of the United States; and the enacting clauses of which are confined to the "forms of mesne process," the forms and modes of "proceedings in the courts of the United States," to writs of execution "and other final processes, and the proceedings thereupon." A law which the legislative power of a state is incompetent to pass, because it is unconstitutional and void, without a rule of court; has become valid and operative by the potency of judicial power, exercised by any judge at his mere discretion. Thus removing all conflicts of sovereign power by the exercise of one, which becomes practically paramount to the final and conclusive decisions of this court, the rights of other states, and the constitution of the United States, as *376 judicially expounded. The judgment now rendered admits of no other conclusion; and as I cannot admit for a moment the principle that the power of congress, if brought to bear directly by its most explicit enactments on this subject, is competent to cure the objections to this law, which are fastened on its vitals by the adjudications of this court in the cases alluded to; I cannot admit, that they can do it by the construction of a law which does not profess to touch the questions necessarily involved in this case; still less that it can be done by the rule of a court subordinate to the appellate jurisdiction of this.
If a state law is incompatible with the constitution of the union, it must be inoperative till the constitution is amended. The legislative and judicial power combined, cannot cure a defect which the supreme law of the land declares to be fatal to a state law; and when, by the solemn judgment of this court, it is declared, that a state law, adopted by a rule of the circuit court, is the rule of both right and remedy in a suit between a citizen of New York plaintiff, and a citizen of Ohio; I am judicially bound to consider, that it is not open to any objections stated in the third proposition of Judge Johnson, in Ogden v. Saunders; or that that case, with that of Shaw v. Robbins, and Boyle v. Zachary, are now overruled. As the case on the record does not admit of the first alternative, but is directly obnoxious to those objections; the inevitable result is, that the affirmance of this judgment must be taken to be the latter. The consequence is, that the effect of state insolvent laws on the citizens of other states is, for the present, an open question in the courts of the states and of the United States, notwithstanding any former decisions of this court in the cases referred to. So I shall consider it here and in the circuit court, and answer to the profession and suitors for past errors, as those of adoption, not from choice, but a sense of judicial duty; and being now absolved from an authority heretofore deemed binding, shall act for the future on principle. That a paramount authority prescribing a rule for my judgment, cannot leave my discretion uncontrolled; when my judgment is free, my discretion is not bound; and that what, in the exercise of my best judicial discretion, I feel bound to do in pronouncing the judgments of a circuit court, according to my deliberate conviction on the law of the case, I cannot undo or avoid doing, by any *377 rule of my own, in the adoption, construction or revocation of which, my discretion is my only guide.
This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Ohio, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed with costs.