Boggs and another *against* Teackle.

THE defendant was arrested and held to bail by process out of the Common Pleas of *Philadelphia* county, in the year 1808, upon a note of hand for 1000 dollars, drawn by him in the city of *Washington* on the 18th of *March* 1807, and payable there. The cause was removed to this Court, and a verdict obtained on the 19th of *November* 1811, in the plaintiffs' favour, for 1222 dollars 37 cents, on which final judgment was entered on the 13th of *December* following. A *ca. sa.* issued returnable to *March* term last, which was returned *non est inventus;* and a *scire facias* went against the special bail, returnable the last *Monday* in *July.*

During the adjourned court in *July,* and before the return day of the *sci. fa.,* Binney on behalf of the bail, moved for leave to enter an *exoneretur,* upon the ground of a discharge obtained by the defendant on the 2d of *June* 1812, under a general insolvent law of *Maryland,* where he resided.

The facts in relation to this discharge were these: at *April* term 1811, the defendant presented his petition to the judges of *Somerset* County Court, stating that he was in execution, and that in consequence of disasters in commerce, he was unable to pay his debts, but was willing to deliver up for the use of his creditors all his estate on the terms prescribed by law, a schedule of which, together with a list of his creditors, as far as he could ascertain them, was annexed. The Court thereupon ordered, that he should be discharged from custody, and should give notice to his creditors, by publishing a copy of the order in one newspaper in *Baltimore, Philadelphia, Washington,* and *Easton,* three months before the first

same effect ought to be given to hers, and therefore the bail are intitled to an *exoneretur.*

*Saturday* in *September* court, and to be continued four successive weeks.

This petition and order were made under a statute of *Maryland*, passed in *November* 1805, which directed notice either public or personal to the creditors; and upon the debtor's executing an assignment to a trustee, and obtaining the assent in writing of two thirds in value of his creditors, authorized the Court to discharge him from all debts, covenants, contracts, promises and agreements, due, owing or contracted by him at the time of his application. The law contained a provision, that if within two years after the debtor's application, any creditor should allege in writing to the County Court certain frauds against the debtor, and support the allegation upon the trial of an issue to be directed by the Court, he should be precluded from all benefit under the act.

On the 27th of *December* 1811, the legislature of *Maryland* passed a private statute, giving power to the *Somerset* County Court, to extend the benefit of the law of *November* 1805 and its supplements to the defendant, without shewing the assent in writing of his creditors, and without producing proof that he had given the notice required by the act; and on the 2d of *June* 1812, the County Court, on the defendant's executing a general assignment to a trustee, accordingly discharged him from his debts &c., in the terms of the law.

*Tod* and *Hallowell* for the plaintiff, made three objections to the motion. 1st. That the bail were fixed before the discharge of the principal, this having taken place on the 2d of *June* 1812, and the *ca. sa.* having been returned in the month of *March* before. 2d. That the debt, having been contracted out of the state of *Maryland*, it could not be discharged by a law of the state. 3d. That the special act of *Maryland*, was in such plain violation of the principles of justice, that no discharge under its authority should be respected in this state.

1. In *Woolley* v. *Cobbe* (a) the precise point was determined. Lord *Mansfield* and the whole court say, " that if " the certificate is obtained by the bankrupt, *before* the bail

(a) 1 *Burr.* 244.

1812.

BOGGS
et al.
*v.*
TEACKLE.

" are *fixed*, they shall be discharged; but if they are fixed be-
" fore the certificate is obtained, they remain liable." The
bail are fixed by the return of the *ca. sa.* The same princi-
ple was adopted by the same court, in the subsequent case of
*Cockerill* v. *Owston* (*a*). If the bankrupt dies after the return
of the *ca. sa.* the bail must answer; and his discharge by a
bankrupt or insolvent law is within the same principle.

2. The debt in this case was contracted out of the state of
*Maryland;* and no law except that which binds the person of
the creditor, or emanates from an authority within whose
jurisdiction the contract was made, can discharge it. The
*lex loci contractus*, which creates the charge, may be allowed
to create the discharge, and over the persons of creditors
within their jurisdiction, every free state may have authority
to legislate; but it cannot be endured that a debtor shall by
the laws of a country, foreign both to the place of the con-
tract, and to the person of the creditor whom the debt fol-
lows, obtain a discharge from the debt. The laws of no
country have an extraterritorial force, except so far as the
comity of other countries may permit it; and in no case has
this comity been carried so far, as to give effect to a dis-
charge in such a case as the present. In *Green* v. *Sarmiento*
(*b*), a discharge of the defendant by the bankrupt law of
*Teneriffe*, was held by Judge *Washington* to have no effect
upon a judgment in *New York*. In *Millar* v. *Hall* (*c*), where
the defendant was discharged by the law of *Maryland*, the
debt was contracted in *Maryland*. Here the debt became in
fact a debt in *Pennsylvania*, by the judgment, which merged
the original contract, and created a new one. Besides, the
discharge is not final by the act of *Maryland*, until two years
after its date. If the motion obtains, the bail will be exone-
rated, and yet perhaps the defendant's certificate be vacated.

3. The comity of this state to the state of *Maryland* is the
only reliance of the bail. But can this Court be prevailed upon
to shew any comity to a law, which contrary to the princi-
ples of natural justice, gives a debtor the liberty of obtaining
a discharge secretly, without affording to a creditor the op-
portunity of suggesting fraud, concealment of property, or
any thing in opposition to it? Nay, gives him this privilege

(*a*) 1 *Burr.* 436.        (*b*) *Brown's Rep. App.* 31.        (*c*) 1 *Dall.* 229.

as a special favour and accommodation, against the terms of a general law, and as it were from a fear that notice to the creditors would defeat it? If in any case respect should be shewn to a foreign law, it should be only when respect is due, and where the principles of the law are intended and calculated to attain equal justice between the parties embraced by it.

*Binney* for the bail. 1. The final discharge of the defendant was before the return of the *scire facias*, and so was the present motion. The time allowed to the bail *ex gratia* had therefore not expired. Under such circumstances the rule is not as it has been stated by the plaintiff's counsel; but on the contrary, an *exoneretur* may be entered at any time before the return of the *scire facias*. The principle is, that the discharge of the bankrupt is equivalent to a surrender; because it would be a useless circuity to compel a surrender in fact, when the next moment after, the Court would discharge the principal. Bail are fixed by the return of the *ca. sa.* only as to certain purposes. If the principal dies, they are liable. But though he is discharged by the bankrupt law, the bail may surrender; and as the surrender would be futile, they are intitled to relief on motion. So it was held in *Olcott v. Lilly* (a). So is the uniform practice at this day in *England;* 1 *Tidd.* 240; and the cases in *Burrow* do not contradict it. In *Woolley* v. *Cobbe* the defendant was not discharged, until the money had been levied by execution against the bail, and was in the hands of the sheriff. In *Cockerill* v. *Owston* the question did not concern the bail, but the principal only; and the single point was whether his certificate discharged the bail bond, as well as the original debt.

2. With respect to the general principle urged for the plaintiffs, it is conceded; but the courts in *Pennsylvania* have held a different doctrine, by which we are bound. Uniformity of judicial decisions is essential to the safety of the citizen. No greater calamity can befal any people, than to have its rights either of person or property fluctuate with the occasional opinions or feelings of men. This question then was settled by *Millar* v. *Hall*, where the original contract on

(a) 4 *Johns.* 407.

1812.

Boggs
et al.
*v.*
Teackle.

which the defendant received the money in suit, was executed in *Pennsylvania*, and the discharge was in *Maryland*. But it was more precisely settled in *Hilliard* and *Pippet* v. *Greenleaf (a)*, where the debt was clearly contracted in *Penn-*

(a) For the following note of that case, the reporter is indebted to Mr. Justice *Yeates.*

Hilliard and Pippet
            v.                } March Term 1800.
      Greenleaf.

Motion to discharge the defendant on common bail.

*A. contracted a debt in Pennsylvania, and then removed to Maryland, where he was discharged under a bankrupt law. He afterwards returned to Pennsylvania, and was arrested. The court discharged him on common bail.*

THE defendant, resident in *Maryland*, obtained a discharge with divers other persons from all his debts, under a certificate of the chancellor of that state, grounded on an act of assembly, which passed during a session commencing on the 5th of *November* 1798, and ending on the 20th of *January* 1799 By the terms of the act, he was intitled to be discharged as a merchant, unless one fourth part of his creditors dissented therefrom, on his giving certain notice of his intention to take the benefit of this insolvent law, by a general publication in the gazette, and executing an assignment for the benefit of his creditors generally.

The chancellor certified that he had in all things conformed to the law, made his assignment and was discharged from his debts.

It was admitted that the plaintiffs were citizens of *Pennsylvania*, that the debt for which the defendant was arrested, was contracted in *Philadelphia*, and that upon a former application to this Court for the benefit of the insolvent acts here, he had not given notice to the plaintiffs pursuant to those laws.

*Gordon* for the plaintiffs objected to the motion.

The *Maryland* act is retrospective on debts theretofore due. Its operation is similar to the insolvent law of *New Jersey*, in *James* v. *Allen,* 1 *Dall.* 188, discharging the debtor from imprisonment in that state, but not going beyond the limits It is local in its nature. The law of *Maryland* under which *Hall* was discharged, 1 *Dall.* 229, was framed for general purposes, and may fairly be distinguished from the present. The inconveniences of such an act are highly obvious, as is fully shewn by the argument of the plaintiffs' counsel in that case. *ib.* 230. And good policy will prevent the court from going beyond the bounds of that decision.

*Ingersoll* and *W Tilghman* answered, that it appeared in the beginning of the case of *Millar* v. *Hall,* that the *Maryland* law was enacted, subsequent to the debt in question, and to the institution of the suit For nine or ten years past, that state had passed no general insolvent law, but had deemed it sounder policy to enact special insolvent statutes, as the particular occasions arose. But confined as their act is, to individual cases, its effect in those cases is general and unrestricted. It discharges the peti-

*sylvania,* and a discharge under a law of *Maryland* held to be decisive. If this Court should revert to the correct principle, they must overrule all the decisions of their predecessors from *Millar* v. *Hall* down; for that principle does not regard the place where the contract was made, but merely the jurisdiction over the creditor's person. The *lex loci contractus* has respect to the construction, not to the discharge of contracts. No law can in strictness discharge a debt, but a law of that state within which the creditor is domiciled.

3. As to the character of the *Maryland* statute, this Court can never criticise the motives and views of an independent legislature. No free state would submit to it. The same measure of respect upon such subjects, that we shew, will be shewn to us; and a collision will be produced, as fatal to the dignity, as it will be offensive to the independence of the respective states. We must give credit and effect to all the insolvent laws of *Maryland,* or we must reject the whole. But in fact the special statute is of little moment. Notice has not been always required by our own law. The assignment of the debtor's estate is the material act, and that was made in the present case.

*In reply* to the case of *Hilliard* v. *Greenleaf,* it was said to be a surprise upon the bar, to have been but imperfectly argued on behalf of the plaintiffs, and to be contrary to the very decision on which it professed to be founded.

tioner from all his debts on his complying with certain pre-requisites. It is indeed more beneficial to creditors than the law under which *Hall* obtained relief, because the dissent of one fourth part of the creditors prevents the discharge of the debtor. Here the assignment is general, and equally advantageous to all the creditors. The courts of *Maryland* pay due respect to the discharge of debtors under the bankrupt laws of this state. Major *Smith* contracted debts in *Maryland,* and obtained a certificate of conformity from the commissioners of bankrupt here. His creditors in *Maryland* were not permitted to arrest him in that state. So of *New Jersey,* Mr. *Benezet* contracted debts there, and took the benefit of the bankrupt laws here. His person was held exempted from debts barred by our act, in the judicature of *New Jersey.*

The COURT observed that it was of infinite consequence their decisions should be uniform. The principal case is precisely the same in principle as that of *Millar* v. *Hall,* and we consider ourselves bound by that determination.

Let the defendant be discharged on common bail.

Boggs
et al.
v.
Teackle.

TILGHMAN C. J. This is a motion on behalf of the bail of the defendant, for an *exoneretur* to be entered on the bail piece, on the ground of the principal having been discharged from his debts, by virtue of an act of assembly of the state of *Maryland.*

Several objections have been made to this motion by the plaintiff's counsel; the first of which is, that it is too late, the bail having been previously fixed by the return of *non est inventus* to a *ca. sa.* against the principal. In support of this was cited the case of *Woolley* v. *Cobb,* 1 *Burr.* 244. Lord *Mansfield,* in delivering his opinion, does indeed say, that if the bail are *fixed* before a certificate of bankrupt is obtained by the principal, they remain liable. It is to be remarked however, that in that case there had been judgment against the bail, and a *fi. fa.* issued and the money levied, and in the sheriff's hands, before the certificate was obtained. Under those circumstances, the bail had no pretence for relief. But if Lord *Mansfield* meant to lay it down as a rule, that the bail remained liable in case the principal obtained his certificate. after the return of a *non est inventus,* and before the time allowed for surrendering him had expired, he has been contradicted by subsequent cases, as appears by the authorities cited in *Olcott* v. *Lilly* in the Supreme Court of *New York,* 4 *Johns.* 407. A *ca. sa.* having been returned *non est inventus,* the bail is so far fixed, that he remains liable, unless the body of the prinpal is surrendered within the time allowed *ex gratia,* by the practice of the court. If the principal dies there is no relief. But if he becomes intitled by law to a discharge from imprisonment, an *exoneretur* will be entered without an actual surrender, on application at any time within the period allowed for surrender; because it answers no purpose to surrender a person who is intitled to an immediate discharge. This is the settled law in *New York,* and it is so reasonable, that I fully concur in it. In the case before us, the motion was made before the return of the *sci. fa.* against the bail. It was therefore in time.

2. The second objection goes to the law of *Maryland,* by which the defendant was discharged from his debts, on executing a conveyance of all his estate in trust for his creditors. It is contended that this debt, having been contracted in the city of *Washington,* the legislature of *Maryland* had no control over it. Were it a new case, I should think it well worthy of

very serious deliberation. But the law having been settled by repeated decisions in this Court, I do not think myself at liberty to disturb it. The very point was expressly decided in *Hillyard* and *Pippet* v. *Greenleaf*, where the debt was contracted in this state, and the defendant discharged by act of assembly of *Maryland*. The rule which we have adopted, is to extend the same courtesy to our sister states which they shew to us. It was so laid down in *Smith* v. *Browne*, 4 *Binn*. 203. The courts of *Maryland* have paid regard to our insolvent laws, where they have extended to debts contracted out of *Pennsylvania*. We therefore pay the same regard to their laws. But it is said, that although we ought to pay regard to the general laws of *Maryland*, yet the case of the defendant is an exception, because he was discharged by *favour*, the legislature having passed a special act dispensing with some important provisions of their general law, that is to say, dispensing with notice to the defendant's creditors, and with the assent of two-thirds of them in value, to his discharge. What were the reasons of this exemption does not appear; but the defendant was not discharged without an assignment of all his property, and his creditors may at any time within two years, invalidate his discharge, if they can convict him of fraudulent practices. But we shall take dangerous ground, if we enter into an inquiry into the reasonableness of the law of *Maryland*. Such an inquiry on our part, would lead to a similar one on theirs, with respect to our laws, and the spirit of courtesy would soon be extinguished, amidst mutual accusations and recriminations. No independent state will submit to have its motives or its policy questioned by another. There is no acting by halves; we must either give full faith to the laws of our neighbours, or reject them altogether. Upon the whole, I am of opinion that agreeably to the established practice of this Court, the motion for an *exoneretur* should be granted.

YEATES J. *Millar* v. *Hall* in *January* Term 1788, led the way to *exonereturs* being entered on the bail piece, where the defendant had been discharged under an insolvent law of the state of *Maryland*, which was in the nature of a general bankrupt law. It was the policy of that state not to pass a general insolvent law, but to enact special insolvent statutes, as

*1812.*

BOGGS
et al.
*v.*
TEACKLE.

particular occasions arose. The decision has been followed in other cases, and particularly in *Hilliard* and *Pippet* v. *Greenleaf* in *March* Term 1800, where the defendant was a citizen of *Maryland*, but the plaintiffs were citizens of *Pennsylvania*, and the debt was contracted here, a note of which I have taken. That case in all its essential features, cannot be distinguished from the present. It appears to me dangerous in the extreme to depart from established principles settled on due deliberation, upon a new artificial system of reasoning. It would tend to entrap those persons who rest their confidence in the uniformity of decision of the tribunals of justice, so devoutly to be wished for in every free country, governed by known laws.

I am therefore of opinion that the *exoneretur* should be entered.

BRACKENRIDGE J. I concur in allowing the motion, solely on the ground of the *stare decisis.*

Motion granted.