1813.

WALSH and another *against* NOURSE.

*Philadelphia,*
*Tuesday,*
January 5.

THIS was a motion to enter an *exoneretur* upon the bail piece.

The debt in this case was contracted in *New York,* where the plaintiffs resided. The defendant an inhabitant of *George-town,* was discharged on the 7th of *August* 1811, under the act of Congress of the 3d of *March* 1803, an insolvent law for the *District* of *Columbia,* which merely liberated the person, and prevented its future arrest, but did not discharge the debt.

After this motion was made, allegations of fraud were filed against the insolvent, in the proper court in *Washington,* with a view to vacate the certificate; and while these proceedings were pending, this Court would not entertain the motion; but on the allegations being dismissed in the last month, the motion was now called on.

*Chauncey* on behalf of the motion, argued that this court had bound itself to the principle of reciprocity, in cases of this nature; and that by reference to various decisions, particularly that in *Smith* v. *Brown* (*a*), it would be found that no other rule on the subject, was known to this state. That being settled, the only question was, to what extent is a discharge under the insolvent law of *Pennsylvania* recognized in the *District* of *Columbia?* And on this point the certificate of Judge *Cranch,* is decisive. A note of three cases is given (*b*). In the first, the debt was contracted in *Georgia,* and

*A discharge in the District of Columbia, under the insolvent law of Congress, does not entitle bail in this state to an exoneretur, because, according to the opinions of the Court of last resort in that district, a discharge under the insolvent law of Pennsylvania would not be recognised there; the debt being contracted and due to a person out of the jurisdiction of the place where the discharge was obtained.*

(*a*) 3 *Binn.* 203.

(*b*) The following are the notes of the cases referred to.

*Alexandria county.* November *term,* 1798. WRAY *v.* REILY. Debt on a judgment of a court in the state of *Georgia* in 1796. The debt was originally contracted in *Georgia.* Plea of a discharge under an insolvent law of *Maryland,* which discharged the debt itself and not merely the person, held good.

*Washington county.* July *term,* 1805. BOYER *v.* HERTY, special bail of *Roberts. Ca. sa.* to *December* term 1803, returned *non est.* 7th of *January* 1804, insolvent law of *Maryland* passed discharging *Roberts.* 27th of *January* 1804, *scire facias* issued against bail, returnable to *July* term 1804.

**1813.**

WALSH
et al.
*v.*
NOURSE.

the discharge took place under a bankrupt law of *Maryland.* In the second the discharge was under an insolvent law of *Maryland.* In the third the debt was contracted in *Maryland,* and the discharge was under the insolvent law of *Pennsylvania.* In all, the Circuit Court of *Columbia* recognised the discharge. The last case is in point to the present.

*Montgomery* for the plaintiffs, contended that the discharge ought not to be recognised, because the debt was contracted and the plaintiffs resided in the state of *New York;* and neither in that state, nor in *Pennsylvania,* where the suit was brought, nor by the general law, could such a discharge affect such a debt.

In *New York,* the cases of *Smith* v. *Smith* (*a*), and *Vanraugh* v. *Vanarsdaln* (*b*) are express, that a debt contracted in one state, is not discharged by the insolvent law of another.

In *Pennsylvania, Millar* v. *Hall* (*c*), which is the. leading case, was a discharge under the law of *Maryland,* of a debt contracted there; and the subsequent cases of *Thomson* v.

*May* 1804, *Roberts* was discharged by the Chancellor of *Maryland. July* term 1805, *Herty* moved to have an *exoneretur* entered upon the bail pi ce. But the Court refused, because the motion was made too late. The surrender of the principal himself, would not then have been received. The Court intimated an opinion, that if the motion had been made in time, *i. e.* while the bail could discharge himself by the surrender of the principal, it would have prevailed.

Washington *county.* July *term* 1804. DAVIS and others *v.* MARSHALL. Debt contracted in *Maryland.* Defendant moved to *Philadelphia,* where his creditors arrested him, and he was discharged under the insolvent law of *Pennsylvania.* The plaintiffs brought suit in the General Court of *Maryland.* On producing this discharge, the General Court of *Maryland* permitted the defendant to appear without bail. The plaintiffs then struck off their action, and brought suit in the *District* of *Columbia,* where this Court also permitted the defendant to appear without bail, upon his producing his discharge under the laws of *Pennsylvania.*

Judge *Cranch,* on communicating these notes, stated that some other cases had occurred, in which the practice of the Court had been in conformity with these; and he did not know any case decided differently; so that he considered it as the uniform practice of that Court, to give the same validity and effect to the insolvent law of any state, as it would have had in the courts of that state.

(*a*) 2 *Johns.* 235.      (*b*) 3 *Caines* 154.      (*c*) 1 *Dall.* 229.

*Young* (*a*) and *Donaldson* v. *Chambers* (*b*), were ruled upon the authority of that decision. The general law is shewn by a variety of adjudications, all confirming the principle, that to make a discharge valid, either the debt must have been contracted, or the creditor resident, within the jurisdiction where the discharge took place. *Emory* v. *Greenough* (*c*), *Proctor* v. *Moor* (*d*), *Green* v. *Sarmiento* (*e*), *Knox* v. *Greenleaf* (*f*), *Pedder* v. *MacMaster* (*g*), *Smith* v *Buchanan* (*h*). The law which gives relief to the debtor, must bind the person of the creditor, or have been in the contemplation of the parties at the time of the contract.

*Binney* on the same side argued, that if this Court would not adopt the argument of his colleague, they must at least consider themselves as bound by the rule of their predecessors, whose decisions had rejected the general rule, and created in its place one of a peculiar kind. The only question was as to the character of that rule. In *Millar* v. *Hall*, and the other cases ruled by it, the discharge was under a bankrupt law, which wiped off the debt, and this Court gave it effect. But in the only case of a discharge under an insolvent law, relieving the person merely, *James* v. *Allen* (*i*), no effect was given to it. The distinction must have been founded on this, that where the person is discharged and the goods left liable, it becomes a question of remedy merely, a *capias* and *ca. sa.* being taken away, and *summons* and *fi. fa.* left; and, the courts of all countries adopting their own remedies without regard to foreign laws, as in *Smith* v. *Spinolla* (*k*), they had deemed an insolvent's discharge to have no effect any where but upon the remedy, and therefore not to be recognized by them. It has been only in relation to an absolute discharge that comity has been shewn. In this case the discharge of the defendant is merely personal, and leaves his future goods liable to execution.

*Chauncey* in reply, insisted that the case of *Hilliard* v. *Greenleaf* (*l*), was a complete answer to the argument upon

(*a*) 1 *Dall.* 294.  (*e*) *Brown.* 30. *App.*  (*i*) 1 *Dall.* 188.
(*b*) 2 *Dall.* 100.  (*f*) *Wallace* 108.  (*k*) 2 *Johns.* 198.
(*c*) 3 *Dall.* 369.  (*g*) 8 *D. & E.* 609.  (*l*) *Supra. p.* 336.
(*d*) 1 *Mass.* 198.  (*h*) 1 *East.* 6.

1813.

WALSH
et al.
v.
NOURSE.

the general rule. In that case the debt was contracted and the creditor resided in *Pennsylvania*, and the discharge was granted in *Maryland*. As to the distinction between bankrupt and insolvent laws, it had not been any where taken by the Court, although *James* v. *Allen* did not appear to coincide with the other cases. Such a distinction was completely at variance with that principle of reciprocity on which *Smith* v. *Brown*, after much consideration had been ruled; for *Pennsylvania* at the date of those cases, had no bankrupt law. She has none now. And of course, to argue that her courts ought to respect only such discharges as take away the debt, is to argue that she never can respect the bankrupt laws of other states, on the ground that they pay respect to hers; which is the meaning of reciprocity. The discharge, whether absolute or personal, is intitled to respect, because it follows a surrender of all the debtor's property, for the benefit of his creditors. They are the same in their benefit to the creditors, they ought to be the same in their advantages to the debtor. The Circuit Court for *Columbia*, makes no distinction, but gives full effect to our insolvent law.

At the close of the argument, Mr. *Tilghman*, as *amicus curiæ*, stated, that in *Greenleaf* v. *Banks* in the Supreme Court of the *United States*, where the question was whether a discharge in *Maryland*, was a bar to an action for a debt contracted in *Virginia*, Judge *Chase* intimated to the counsel of the plaintiff in error, that all the judges present had expressed an opinion adverse to the discharge; in consequence of which the writ of error was non-prossed.

TILGHMAN C. J. This is a motion for an *exoneretur* on the bail piece. The debt for which the plaintiffs sue, was contracted in *New York* where they reside. The defendant has been discharged from imprisonment at *Washington* in the *District* of *Columbia*, by virtue of an act of congress for the relief of insolvent debtors within the *District* of *Columbia*, passed the 3d of *March* 1803. By this act the person of the debtor is discharged from imprisonment, on making an assignment of all his estate for the benefit of his creditors; but any property which he may afterwards acquire, remains liable to the payment of his debts. It is provided by the 14th section of the act, " that no discharge under it shall have a greater

"effect in any particular state, than if such debtor had been discharged under the insolvent debtors law, of any other state."

If this matter is considered *on principle*, it is not easy to discover by what authority any state can by its laws affect a debt contracted in another state, where the creditor is residing. I mean how it can affect the debt so as to prevent the creditor from bringing an action in another state. Every state has power over the persons residing within its territory, and therefore where a debt is discharged by the law of a state in which both plaintiff and defendant reside, another state ought to pay regard to it. Repeated decisions by my predecessors in this court, have placed the law on a footing somewhat different from the principle I have mentioned. Our rule has been to pay the same regard to the insolvent laws of our sister states, which their courts pay to ours. If the matter were to be taken up anew, I should be for adhering to what I consider the true principle. But not without considerable reluctance, I have thought myself bound by former decisions, as I have declared in the case of *Boggs* and *Davidson* v. *Teackle*, a few days ago. We are to consider therefore how the law is held in the *District* of *Columbia*. That district is subject to the laws of the *United States*, and the judges are appointed by the President with the advice of the Senate. A writ of error lies from the inferior courts to the Supreme Court of the *United States;* so that we had better go to the fountain head at once, and inquire what is the opinion of the Supreme Court. I believe the point has never been expressly decided by that court, although it has been several times before them in cases which I shall mention, and it has been several times decided by judges of the Supreme Court sitting in the Circuit Courts. In the case of *Emory* v. *Greenough*, 3 *Dall.* 369, the debt was contracted in *Massachusetts*, the debtor went to *Pennsylvania* where he was discharged, he returned to *Massachusetts*, and in an action brought against him in the Circuit Court there, it was determined that the *Pennsylvania* discharge was of no validity. A writ of error was brought to the Supreme Court of the *United States*, which was then held in this city. It was fully argued. I was present at the argument, and from intimations which fell from the judges, it was generally supposed that

1813.

WALSH
et al.
*v.*
NOURSE.

1813.

WALSH
et al.
*v.*
NOURSE.

the judgment of the Circuit Court would be affirmed. No judgment however was given, the Court being suddenly broken up by a dangerous fever with which the city was infected. The cause went off afterwards for a defect of jurisdiction. In *Banks* v. *Greenleaf* in the Circuit Court of *Virginia*, judgment was given against the defendant, who pleaded his discharge under a law of *Maryland* to an action for a debt contracted in *Virginia*. A writ of error was brought to the Supreme Court, and non-prossed by the plaintiff in error, from an apprehension that the Court would decide against him. In *Green* v. *Sarmiento*, in the Circuit Court for the District of *Pennsylvania*, it was lately decided that a discharge under a bankrupt law of the *Island* of *Teneriffe*, was not available in an action brought against the defendant on a judgment in the state of *New York*. I am inclined to think therefore, that when a point of this kind shall be brought before the Supreme Court, the decision will be unfavourable to the debtor. Under these circumstances, the rule adopted by this Court, which deals out to others the same measure which they deal to us, would prevent us from discharging the defendant if he had been surrendered by his bail. It follows that an *exoneretur* should not be entered on the bail piece. I am therefore of opinion that the motion should not be granted.

YEATES J. The difficulty in my mind during the argument of this case, arose from the certificate of Judge *Cranch*, produced by the counsel who supported the motion for an *exoneretur*. After specifying three different suits in the District Court of *Columbia*, and the decisions of the Court therein, he proceeds to state, " that he considers it as the uniform prac-" tice of that Court to give the same validity and effect to the " insolvent law of any state, as it would have had in the courts " of that state." The principle on which this Court has acted, is to discharge the party on common bail, if the state where the debt is discharged, extends the same courtesy to citizens of *Pennsylvania;* and in *Smith* v. *Brown*, 3 *Binn.* 202, the Chief Justice has gone so far as to say, " that he thinks it fair to " presume unless some reason is shewn to the contrary, that " such courtesy is extended, and such has been the course " hitherto pursued by the Court, when discharges have been " pleaded under the laws of our sister states." The certifi-

cate of Judge *Cranch* would therefore be highly authoritative, unless we had strong evidence to impugn it. But an appeal lies from the District Court of *Columbia* to the Supreme Court of the *United States;* and it is ascertained fully to us, that a different doctrine prevails in that Court, from the cases cited at the bar, and particularly in *Greenleaf* v. *Banks,* mentioned by Mr. *E. Tilghman* as *amicus curiæ.* A diversity of decision on this subject holds in different parts of the union. *New York* and *Massachusetts Bay* do not adopt our principle of reciprocity as the rule of decision. But feeling myself bound by it, as the governing rule of this Court, and conceiving that the settled doctrine in the courts of *dernier resort,* must be our guide on the point of comity, I am of opinion that the motion for the *exoneretur* should be denied.

BRACKENRIDGE J. expressed his concurrence; and added, that, should an opportunity occur, he should have no objection to reconsider the principle which had been adopted by the Court.

Motion denied.