## MAGUIRE v. BURTON AND IRONS.

May 25, 1835.

*Rule to show cause why an exoneretur should not be entered on the bailpiece.*

Where the prothonotary enters "judgment nisi" on a verdict, it is not a judgment on which the defendant's discharge under the insolvent law will operate.

Such discharge does not apply to a cause of action founded on a *tort*, unless *judgment* has been rendered against the defendant previous to his discharge.

After verdict, no rule or application for leave to enter judgment is necessary; but after the lapse of the period granted for a motion for new trial, or in arrest of judgment, should no such motion be made or pending, the prevailing party, on payment of the jury fee, is entitled to have judgment marked by the prothonotary absolutely.

THIS rule was argued by *Jack,* for the rule; and *Gerhard,* against it. Cases cited: Bateman *v.* Collins, 2 *Keble* 790; Aldwick *v.* Hutchison, 1 *Lutw.* 333; 2 *Burr.* 956, 958; 1 *Dall.* 229; 5 *Binn.* 332; *Ingraham on Insolvency* 61, 159; 2 *Dall.* 229; 1 *Binn.* 292; 2 *Tidd's Prac.* 934.

The opinion of the Court, which fully states all the facts, was delivered by

STROUD, J.—This was an action for a *tort.* It was tried in this court on the 10th of October 1834, and a verdict of 800 dollars rendered for the plaintiff. On the same day, the defendant obtained a motion for a rule to show cause why a new trial should not be granted. On the 13th of October, an entry was made on the minute book of the court by the prothonotary, *without* the direction of the court, *judgment nisi.* Shortly after the verdict was given, the defendant was surrendered to prison (the suit having been instituted by *capias*) by his bail. On the 22d of November new bail was obtained, and the defendant liberated. Being a citizen of the state of *Delaware,* he immediately returned thither; was arrested for an alleged debt of 10 dollars, due to one of the individuals who had been received here just before as his bail; and on the 26th of November presented his

[Maguire v. Burton and Irons.]

petition to the court to be discharged from the jail at Newcastle as an insolvent prisoner, agreeably to an act of assembly passed in February 1827. The court thereupon appointed the 29th of November for the hearing of the petitioner, and directed notice by summons to be given to his creditors of the time and place of the intended hearing. The defendant was discharged accordingly on that day as an insolvent prisoner.

Having procured a duly authenticated copy of the record of these proceedings of the court at Newcastle, he repaired to this city, and through his counsel obtained a rule to show cause why an *exoneretur* should not be entered on the bailpiece. His discharge as an insolvent prisoner at Newcastle is the *sole* ground of this application. All these proceedings took place during the pendency of the motion for a new trial, which was not discharged until February 23d, 1835.

Ever since the decision in Miller *v.* Hall, 1 *Dall.* 229, our courts have given to the discharges of insolvent debtors, under the laws of our sister states, the same effect as the courts of those states accord to similar discharges under our laws. The states of *Delaware* and *Maryland* respect our discharges, and the same courtesy is extended by us to them respectively, under the like circumstances. This doctrine had been so repeatedly recognised prior to the case of Boggs *v.* Teackle, 5 *Binn.* 332, which was decided in 1812, that Chief Justice Tilghman, although he denied the soundness of the *principle* on which it was founded, felt constrained to regard the decision as *authority* not to be controverted.

But by the settled construction of our acts of assembly for the relief of insolvent debtors, a discharge has no operation in actions of tort, unless judgment has been obtained against the applicant previous to his obtaining it. *Ingraham on Insolvency* 61, 159, 160 (2d *edit.*). Whether or not the courts of Delaware have placed a similar construction on their insolvent law, is a point on which we have no information. Nor is it at all material; we *take it for granted*, that they do not accord to *our* discharges a greater effect than *we* ourselves do. So that the only question for our decision which is raised by the present rule is, whether, on the *29th of November* 1834, a judgment in conformity with our laws had been rendered on the verdict in the case against the defendant.

The several treatises on practice would be sufficient, if authority be at all needed, to dispose of this question. But since we have been informed that such serious doubts have been entertained on the

subject as to induce an appeal to the supreme court for its decision upon it, it may be best to take a somewhat wider survey.

Turning, then, to the pages of sir William Blackstone, we find, in the chapter which he devotes to the consideration of "The judgment and its incidents," the following introductory remarks. "In the present chapter, we are to consider the transaction in a cause next immediately subsequent to arguing the demurrer or trial of the issue.

"If the issue be an issue of fact, whatever is done subsequent to the joining of issue and awarding the trial, is entered on the record, and is called a *postea*, the substance of which is, that *postea, afterwards,* the said plaintiff and defendant appeared by their attorneys at the place of trial, and a jury being sworn, found such a verdict, or that the plaintiff, after the jury was sworn, made default, and did not prosecute his suit, &c. Next follows the *judgment* of the court upon what has previously passed, both the matter of *law* and of *fact* being now fully weighed and adjusted. *Judgment* may, however, for certain causes, be *suspended* or finally *arrested ;* for it cannot be entered till the next term after trial had, and that upon notice to the other party. So that if any defect of justice happened at the trial by surprise, inadvertence or misconduct, the party may have relief in the court above by obtaining a new trial ; or if it appears the complaint was either not actionable in itself or not made with sufficient precision and accuracy, the party may supersede it by arresting or staying the judgment." 3 *Bl. Comm.* 386 *et seq.* "The causes of *suspending* the *judgment* by granting a new trial," or of *arresting* it altogether, are then stated ; and we are afterwards informed that "if judgment is not by some of these means *arrested* within the first four days of the next term after the trial, *it is then to be entered* on the roll or record." *Ibid.* 395. This summary, in my view, resolves the question before us. For though the trial of the issue of *fact* thus spoken of has reference to a court of *nisi prius*, there is nothing in this circumstance which detracts from its general applicability to all courts of common law jurisdiction. It is especially valuable for the principle which it establishes, namely, that it is a part of the common law, and an inseparable incident to trial by jury in particular, that a reasonable time should be allowed after the finding of a verdict, to enable the losing party to move for a new trial or in *arrest* of judgment. Speaking *generally*, four days are granted for these purposes in the English courts. At the present time, perhaps, in all the courts of this state, a like interval between the

verdict and the judgment is permitted, except when the rendering of the verdict takes place so *near the rising of the court for the term,* as to induce, from considerations of greater expediency, a curtailment of this period.    In this we have but followed analogous British precedents.    Thomas *v.* Ward, 2 *Bos. & Pul.* 393.    A specific rule of each particular court regulates the whole subject with us.    In *this* court the rule allows four days, and by construction this excludes the day on which the verdict is rendered, and if a Sunday intervene, it is also excluded from the computation.    Golder *v* Blackstone, *Wharton's Dig.* 567, *No.* 82, *tit. New Trial,* G, (*a*). But that a reasonable delay after verdict should be permitted before judgment is signed, is a *doctrine of the common law, and would exist in the absence of a rule of court,* is plainly declared by the supreme court in Burrall *v* Dublois, 2 *Dall.* 229 ; and again in Lane *v* Shreiner, 1 *Binn.* 292.

It is supposed, however, that the entry of *judgment nisi,* which appears upon the minute book in the present case, has a meaning peculiar to this court, or perhaps to the courts of this state, and though made within the four days, and even pending a motion for a new trial, it operates as alien upon the real estate of the party against whom it is entered.    When this practice originated, it would, perhaps, not be easy, and certainly it is not very important, to ascertain.    The selection of prothonotaries in our courts, for a series of years, has not been confined within the pale of those who have made the law a study.    And for many years immediately antecedent to the induction of the officer who at present has the charge of this department, the daily transactions of this court were minuted by an individual who, however worthy in other respects, had not the preparatory advantage of the slightest acquaintance with correct legal proceedings.    Even if sanctioned by long usage, yet, never having been recognised by this court, a practice so totally at variance with principle would have no efficacy.(*a*)

The definition of a *judgment,* "*judicium est quasi juris dictum,* the very voice of law and right ;" and the high effect which is given to it, "*judicium semper pro veritate accipitur ;*" and the deliberation which is supposed to precede its entry, " *consideratum est,* &c., because," says Lord Coke, "that judgment is ever given by the court, upon due consideration had of the record before them," mark

(*a*)    Britton v. Stanley, 1 *Wharton's Rep.* 267.

I.——C

[Maguire v. Burton and Irons.]

a wide distinction between a *legal* judgment and the unauthorised entry of the prothonotary under the name of *judgment nisi.* So far is the latter from being the *voice of the law,* that it is entered at a time when the law peremptorily forbids it; instead of importing absolute verity, and therefore not to be contradicted, it is conceded that the result of an application for a new trial may show that it *never had* the least force; and as to deliberation of the court, it is confessedly the private act of the prothonotary, which, though well meant, is totally unauthorised, has passed *sub silentio,* and cannot, in a single instance, avouch the sanction of the court, direct or implied.

It is not to be inferred from these remarks that the practice of the king's bench, which requires a rule for judgment to be entered, is regarded as in force in this court. On the contrary, although it has been said that in general our courts follow the practice of that court, and not that of the common pleas, yet in relation to the signing of judgments it is otherwise. No rule for judgment is necessary, nor need the court be applied to for leave to enter judgment; but after the lapse of the period granted for the purpose of moving for a rule for a new trial or in arrest of judgment, should no such motions be made and pending, the prevailing party, upon payment of the jury fee, is entitled to have judgment signed by the prothonotary, not *nisi* however, but *absolutely.* 2 *Tidd's Prac.* 644.

Rule discharged.