## PEPPER v. DOORES AND TAYLOR.

December 7, 1835.

*Rule to show cause why proceedings on a bail bond should not be stayed.*

In debt on bail bond, the proceedings will not be stayed, and defendant relieved, where special bail has not been entered before the lapse of three terms, although the defendant in the original action has taken the benefit of the insolvent laws before the expiration of the three terms.

The condition of the bail bond can only be complied with by the entry of special bail.

THE decision in this case was upon the following facts, viz. : George Pepper issued a *capias* against William Taylor, on the 8th of April 1834, returnable to the May return day of March term 1834. Taylor obtained a discharge under the insolvent laws on the 16th of April 1834, before which day, however, he had been arrested, and given bail to the sheriff, the present defendant, Doores, having executed the bond.

No further step was taken till after June, September and Decem-

[Pepper v. Doores and Taylor.]

ber terms of 1834, had entirely expired. Suit was then brought, viz., on the 8th of April 1835, by Pepper against Doores and Taylor, on the bail bond, which had been assigned by the sheriff. This action was returnable to the May return day of March term 1835. The plaintiff filed his *narr.* and a copy of the bond, and the defendant, Doores, filed an affidavit of defence.

The present motion was to stay proceedings in the bail bond suit, under such terms as the court might deem proper to impose.

*I. Norris,* for the plaintiff.
*J. A. Phillips,* for defendant.

Authorities cited: King *v.* The Bank of Gettysburg, 2 *Rawle* 197; 4 *Wash. C. C. Rep.* 333; Train *v.* Smyth, *MSS. D. C.,* Dec. T. 1834; 5 *Binn.* 328; 6 *Serg. & Rawle* 543; 5 *Serg. & Rawle* 50; 2 *Yeates* 387; 4 *Binn.* 344.

The opinion of the Court was delivered by

PETTIT, *President.*—As some irregularity has recently found its way into the practice upon this subject, future difficulty may be prevented by our embracing the opportunity afforded by this case of briefly stating our views of the law.

The condition of the bond to the sheriff is, that the defendant shall appear before the court, at the return of the writ. This appearance is to be effected by the putting in and perfecting of special bail; and one of the rules of court gives the defendant a certain time (recently altered from four weeks to eight days) from the return day of the writ to enter special bail, and also recognises the right of the plaintiff, if special bail be not so entered, to sue out the bail bond, the plaintiff having accepted an assignment of it from the sheriff and thereby waived his right to rule the sheriff to bring in the body of the defendant.

Though the bail bond is in strictness forfeited, if special bail be not thus entered, yet in an action on the assigned bond, the court has full power to grant summary relief. Many of the provisions of the statute of 5 *Anne,* entitled "an act for the amendment of the law and the better advancement of justice," have always been in force in Pennsylvania, and among them is the 20th sect., chap. 16, which, after providing for the assignment by the sheriff to the plaintiff of the bail bond, declares that, "if the said bail bond, assignment, or other security taken for bail, be forfeited, the plaintiff in such

[*Pepper v. Doores and Taylor.*]

action, after such assignment made, may bring an action and suit thereupon in his own name, and the court, where the action is brought, may, by rule or rules of the same court, give such relief to the plaintiff and defendant in the original action, and to the bail upon the said bond or other security taken from such bail, as is agreeable to justice and reason, and that such rule or rules of the said court shall have the nature and effect of a defeasance to such bail bond, or other security for bail."

The general rule is, that the court will relieve the bail by staying proceedings in the suit on the bond, whenever such terms can be imposed as will afford the plaintiff every advantage that he could have had by the regular entry of special bail. The usual test is an opportunity of trying the cause. Where, for want of special bail, the plaintiff has lost such an opportunity, according to the usual course of the business of the court, the bail bond must stand as a security for the original debt, and the suit on the bond will be allowed to proceed to judgment. It has been considered that every plaintiff has an opportunity of trying his cause, in our practice, at the third term; and if the costs of the bail bond suit be paid, special bail entered in the original action, and the original cause put at issue in time for trial at the third term, or in lieu of this last mentioned condition, judgment in the original action be actually confessed at the third term, then the bail will be relieved by a stay of the proceedings in the suit on the bond.

Applying this general course of proceeding to the facts before us, a case for the summary interference of the court is not presented, for without counting the term to which the original process was returnable (as it was not returnable to the first return day), three full terms had expired before the commencement of the suit on the bail bond. The plaintiff could not, therefore, be put in as good a situation as he might have enjoyed if special bail had been regularly entered.

The short summary of the law just given, does not contain the slightest novelty. Its correctness has, however, been tested by a recent review of all the authorities upon the subject, and an examination of precedents in this court.

But it is said that the general rule does not apply to the present case, because the defendant in the original action *took the benefit of the insolvent laws* before the plaintiff had lost an opportunity of trying the cause : that if special bail had been entered, the court would,

[Pepper v. Doores and Taylor.]

on proof of the discharge, have entered an *exoneretur* on the bail piece, and that therefore, it was useless to enter special bail at all.

Until a short time ago, the uninterrupted practice of this court required the defendant who obtained a discharge under the insolvent laws, after the *capias* was issued and bail given to the sheriff, and before the plaintiff had lost an opportunity of a trial, to comply with the condition of the bond by putting in special bail, and then, on an application on behalf of the special bail, an *exoneretur* on the bail piece was entered as a matter of course. The propriety of this practice, it is thought, can be readily shown. The undertaking of the bail to the sheriff is, that the defendant shall appear at the return of the writ. This appearance must necessarily mean something more than the mere personal exhibition of the defendant to the court. His mere presence in the court room, would not advance the proceedings, nor is it to be expected that he will remain there corporeally, from day to day, until the end of the controversy. The law, then, has, in its wisdom, designated the entry of special bail as the appearance required: and when the bail to the sheriff executes the bond, he is presumed to understand the true nature of his obligation. The bail to the sheriff has not the charge or custody of the defendant, and cannot therefore surrender him. The undertaking of the special bail, however, is different. It is that the defendant, if condemned, shall pay the condemnation money and costs, or surrender himself into the custody of the sheriff, or that the bail will do it for him. The special bail is, therefore, regarded as having charge or custody of the principal. Now, by the entry of special bail, the bail to the sheriff is released. By the surrender of the defendant in strict form, the special bail becomes entitled to an *exoneretur ;* and then the defendant, being in custody under the original process, is at once, under the 12th section of the act of the 26th of March 1814 for the relief of insolvent debtors, discharged by the court out of custody, on his giving, in the language of the act, " a warrant of attorney to the action," or in other words, filing a common appearance.

But it is an established rule, that wherever a surrender of the principal is a compliance with the condition of the bond, and the principal becomes, by operation of law, entitled to a release from custody, the court will dispense with the form of a surrender and direct the entry of an *exoneretur* at once. Our practice has therefore been, to enter the *exoneretur* on application, as before stated; it

[Pepper v. Doores and Taylor.]

being always understood that the condition of the discharge imposed upon the principal by the insolvent act, to wit, the filing a common appearance to the original action, has been complied with.   In this way the symmetry of our proceedings is preserved, the record is made complete, all misapprehension as to the real state of the suit is avoided, and nothing unreasonable is required of any of the parties. When, however, for want of these steps, the plaintiff has lost an opportunity of a trial, the bail is fixed, and it will not then be deemed " agreeable to reason and justice" to stay proceedings in a suit on the bond.

Nor is authority for this practice wanting.   In Harrison v. Davis, 5 *Burr.* 2683, the court of king's bench refused to stay proceedings on the bail bond, though the original defendant had, before the return of the writ, surrendered himself to the sheriff, who actually had his body in court at the return of the writ, lord Mansfield declaring it to be " a settled point that nothing can be a performance of the condition of the bail bond, but putting in bail."   In Bosbyshell v. Oppenheimer, 4 *Wash. C. C. Rep.* 333, Judge Washington refused to relieve appearance bail where no special bail had been entered, though the principal had obtained a discharge under the insolvent laws of Pennsylvania, and was in court ready to be delivered up in exoneration of the bail, and the discharge was one that would be recognised in the courts of the United States, the contract having been made in the same state ; and he said that the rule of the supreme court of this state was not pretended to be different from the long established rule recognised and confirmed by lord Mansfield, notwithstanding some changes in the modern practice of the English courts.   Again, in Roop v. Meek, 6 *Serg. & Rawle* 543, a case on a bail bond assigned by the sheriff, Judge Duncan says: "if the bail held the release of the plaintiff to the defendant, it would not avail him; nothing but the entry of special bail would be a performance of the condition of the bail bond ;" and cites as authority the case in 5 *Burr.* 2683. That the doctrine of relieving bail by entering an *exoneretur* without an actual surrender, where the principal would be entitled to a discharge if surrendered, is applicable only to special bail, and cannot be extended to bail to the sheriff is manifest, if authority were necessary, from the cases of Boggs v. Teackle, 5 *Binn.* 332, and Beers v. Haughton, 9 *Peters's S. C. Rep.* 329, in each of which the proceedings were upon a recognizance of special bail.

Until, then, there be a change in the very character and terms of

[Pepper v. Doores and Taylor.]

our bail bonds, both reason and authority sustain the course of practice which an endeavour has thus been made to explain and to vindicate.

But it was intimated that this practice, a short time ago, suffered some interruption.   The case of Train *v.* Smyth, to December term 1834 was an action on a bail bond, commenced after the third term in the original action had expired, where the original defendant had taken the benefit of the insolvent laws during the second term, and where his attorney had, before the return day, entered an appearance in the original action by writing his name on the margin of the appearance docket, the usual mode of appearing by attorney in the courts of Philadelphia.   According to the previous practice, this court would have refused to interfere, but the case of King *v.* The Bank of Gettysburg, in 2 *Rawle* 197, being brought into view, was thought, at the moment, from the general language used by the supreme court, to rule the point, and to require an alteration of the practice, and on payment of costs of the bail bond suit, and the confession of judgment in the original action as of the third term, this court, not without reluctance, and, as is distinctly remembered, without taking time for consideration, stayed the proceedings.

In the view which was hastily taken in Train *v.* Smyth, of the suggestions of the supreme court in 2 *Rawle* 197, the fact of the entry of appearance by attorney was deemed important.   In the case before us no such appearance was entered.   Train *v.* Smyth is therefore not directly in point, and could not have misled the present defendants.   But soon after the case of Train *v.* Smyth, this court intimated that they wished to resume and adhere to the practice of requiring special bail to be actually put in, before an *exoneretur* should be entered, where the defendant had taken the benefit of the insolvent laws : and several instances are recollected in which applications for an *exoneretur* were refused, till that condition had been complied with.

A more careful examination of the case of King *v.* The Bank of Gettysburg, will show however that no sufficient ground is furnished for any change, and consequently that this court were right in resuming and will hereafter be right in adhering to their old practice.   It would appear from the imperfect report of the facts, that the principal had been discharged under the insolvent laws, *before the capias in the original suit had issued.*   Now the defendant, on being arrested, could have applied to the court or a judge under the

I.—I

[*Pepper v. Doores and Taylor.*]

12th section of the insolvent act of the 26th of March 1814, and obtained a release from custody on his " giving a warrant of attorney to the action," that is, filing a common appearance. Instead of this, however, he gave bail to the sheriff, a course which the plaintiff could not have required him to take. No special bail being entered, a suit was instituted on the bail bond, and the defendants in such action, in lieu of an application to the court for any relief to which they claimed to be entitled, pleaded the discharge under the insolvent laws, and that it so became impossible for them to enter special bail and surrender the principal, as by the condition they were bound to do, but that the said principal entered an appearance at the return of the writ. The appearance referred to was by an entry of an attorney's name in the margin of the docket. The court below (common pleas of Adams county,) heard, by consent, the whole merits without regard to the pleadings, and decided in favour of the plaintiff.

Upon a writ of error, consent was also necessary to enable the supreme court to give an opinion, as the matter thus irregularly pleaded was the subject of legal discretion in the court below, the exercise of which could not be questioned in another forum. As a decision was requested, it was pronounced, and the judgment reversed. The quintessence of the case would seem to be, that the defendant in the original action having been entitled under the insolvent law to a discharge from arrest on entering a common appearance, and the giving bail to the sheriff having been an act to the performance of which the plaintiff had no legal right, the court below should have stayed proceedings in the suit on the bail bond. The brevity of remark with which the subject is disposed of, serves to show that the court did not purpose to go beyond the record actually before them. An innovation upon a settled practice, relative to another state of facts, was hardly contemplated in the general language employed. From a close view it would appear that the decision does not really require the ascription to the court, of an intention to apply to the case of bail to the sheriff, where the bond had been regularly given before a defendant's discharge under the insolvent laws, a rule relative to an *exoneretur* without actual surrender which it had been well settled could extend only to instances of special bail.

It is therefore conceived that the report referred to does not indicate or point to the change of a practice demonstrated to be regular, both upon principle and authority, and that it does not even furnish a

decision which the supreme court themselves would regard as affecting their own practice, upon a state of facts like that now before this court.

Rule discharged.

