MOUNT v. BRADFORD, SPECIAL BAIL OF LARNED.

Nov. 12, 1836.

*Rule to show cause why an exoneretur should not be entered.*

A. and B. entered into a contract in the District of Columbia, to be executed there, they being and continuing residents there. B. was sued by A. in this state, held to bail, and judgment was entered against him. B. was then discharged under the insolvent laws of the District of Columbia, and subsequently a *fieri facias* and *capias ad satisfaciendum* in the suit in this state were issued against him, which were returned N. B. and N. E. I. *Held,* 1. That the discharge in the District of Columbia was operative, and that the bail was entitled to an *exoneretur.*

2. The principle is, that the courts of Pennsylvania will give to a discharge

under the insolvent laws of another state, the precise extent and effect which is allowed to it by that state itself; that is, as to contracts between parties resident in the foreign state at the date of the contract to be executed there, and also therein resident at the time of the discharge.

3. As to such discharges, the courts of Pennsylvania will not hold that the judgment obtained in this state creates a new *loci contractus*, by way of extinguishment of the original contract, but will look behind the judgment, and inquire into the character and place of the original contract.

4. The doctrine as to reciprocity between the states as to discharges commented on.

THE original action against Larned was commenced by *capias* returnable to June term, 1836. The sheriff made return " *cepi corpus* and *bail bond*." Samuel F. Bradford in due time became special bail.

On the 2d July, 1836, the plaintiff obtained a judgment; he subsequently issued writs of *fieri facias* and *capias ad satisfaciendum* to the September return day of September term, 1836; the *fieri facias* was returned " *nulla bona*," and the *capias ad satisfaciendum* " N. E. I."

A *scire facias* on the recognizance of special bail was issued to the October return day of September term, 1836. On the 3d day of October, 1836, a rule was obtained to show cause why an *exoneretur* should not be entered on the bailpiece, on the ground that on the 26th day of September, 1836, the defendant in the original suit, Larned, was discharged under the insolvent laws of the District of Columbia.

On the return of the rule, it was conceded that the debt from Larned to Mount was contracted in the District of Columbia, where they both resided at the time, and where they have continued to reside ever since, Larned having been arrested while upon a visit to Philadelphia. The fact of Larned's discharge and its character within the District of Columbia was also conceded. (See 5 *Binn*. 381.)

*Fassit*, for the plaintiff, opposed the rule. He referred to the case of Walsh *v*. Nourse, 5 *Binn*. 381, decided in 1813, to show that if the debt had been contracted out of the jurisdiction of the District of Columbia, the discharge would not avail in the present case. He also referred to the case of McMakin *v*. Hamilton, in this court, in May, 1835, to prove that Walsh *v*. Nourse was still recognised as the law of this court, notwithstanding some

[Mount v. Bradford.]

intermediate decisions to the contrary referred to in *Ingraham on Insolvency*, 201.

He also referred to the case of Green *v.* Sarmiento, 3 *Wash. C. C. Rep.* 17 ; 1 *Browne's Rep. App.*, for the position that as the judgment in this court was obtained before the discharge in the District of Columbia, the original contract was extinguished, and the case stood as if the contract had originally been made at Philadelphia.

*D. P. Brown*, with whom was *Broom, contra*, referred to the cases of Patton *v.* Lee, and Adams *v.* Summers, in this court, in 1826, cited in *Ingraham on Insolvency*, 200, as showing that Walsh *v.* Nourse was not the law of the present day.   He also cited Fairchild *v.* Shivers, 4 *Wash. C. C. Rep.* 443.

The opinion of the court was delivered by

PETTIT, *President*.—The rule of reciprocity by which the same regard is paid to the insolvent laws of our sister states, which their courts pay to ours, was stated, for the first time, in Smith *v.* Brown, 3 *Binn.* 203; and though Millar *v.* Hall, 1 *Dall.* 228, was there cited as furnishing the date of the doctrine, yet it is difficult to find in the report of that case any foundation for the reference.   In Boggs *v.* Treacle, 5 *Binn.* 339, the rule was repeated upon the authority of Smith *v.* Brown.   In Walsh *v.* Nourse, 5 *Binn.* 385, Chief Justice Tilghman intimated his regret, that it was so authoritatively established, as to be then beyond judicial control.   In this court, the judges have occasionally felt themselves embarrassed by it, and though the rule, if still in force, would be restricted in its operation to but a few of the states, yet cases sometimes occur presenting facts, which would cause no small degree of reluctance in the enforcement of it.   Indeed, now that we have the benefit of the views of the Supreme Court of the United States in Ogden *v.* Saunders, as confirmed by Boyle *v.* Zacharie, (as will be more particularly noticed directly,) it may be questioned, whether the rule should be any longer recognised at all.   This point, however, will be open for further consideration should a proper case be presented.

In Walsh *v.* Nourse, the Supreme Court of Pennsylvania refused to give effect to a discharge obtained in the District of Columbia, the debt having been contracted, and the plaintiffs

[Mount v. Bradford.]

residing out of that district.  Though it was shown that " the prac-
tice of the District Court of Columbia gave the same validity and
effect to the insolvent law of any state as it would have in the
courts of that state," yet it was inferred, from what had actually
taken place in the Supreme Court of the United States, that that
court, to which there was an appeal from the District Court of
Columbia, would, whenever the point should be distinctly brought
up, make a decision unfavourable to the debtor.

The two cases in this court in 1826, cited by Mr. Ingraham
in his work on the *Insolvent Laws,* page 201, were determined
under the impression that as fifteen years had elapsed without
producing any action on the subject by the Supreme Court
of the United States, the unaltered practice of the District Court
of Columbia should be recognised, notwithstanding the case
of Walsh *v.* Nourse.   All difficulty on this point may, however,
be considered as removed by the case of Ogden *v.* Saunders,
determined in 1827, and reported in 12 *Wheaton,* 213.   It was
there decided, that though a state insolvent law was valid, if
limited to the *controversies of citizens of the state,* yet as between
parties of different states, it had no application, and this, too,
without regard to the place in which the contract originated.   In
Boyle *v.* Zacharie, 6 *Peters' Rep.* 643, Mr. Justice Story, in
pronouncing the judgment of the court, where the effect of the
discharge under a state insolvent law was distinctly presented,
says, " the ultimate opinion delivered by Mr. Justice Johnson in
the case of Ogden *v.* Saunders, 12 *Wheat.* 213, 358, was concurred
in and adopted by the three judges, who were in the minority upon
the general question of the constitutionality of state insolvent
laws, so largely discussed in that case.   It is proper to make this
remark, in order to remove an erroneous impression of the bar,
that it was his single opinion, and not of the three other judges
who concurred in the judgment.   So far, then, as decisions upon
the subject of state insolvent laws have been made by this court,
they are to be deemed final and conclusive."   The language of
Judge Johnson, thus adopted and confirmed, is as follows:—" All
this mockery of justice, and the jealousies, recriminations, and
perhaps retaliations, which might grow out of it, are avoided, if
the power of the states over contracts, after they become the
subject exclusively of judicial cognizance, is *limited to the contro-
versies of their own citizens.*   And it does appear to me almost

[Mount v. Bradford.]

incontrovertible, that the states cannot proceed one step further, without exercising a power incompatible with the acknowledged powers of other states, or of the United States, and with the rights of the citizens of other states. *Every bankrupt or insolvent system in the world must partake of the character of a judicial investigation. Parties whose rights are to be affected are entitled to a hearing.* Hence, every system, in common with the particular system now before us, professes to summon the creditors before some tribunal, to show cause against granting a discharge to the bankrupt. *But on what principle can a citizen of another state be forced into the courts of a state for this investigation?* The judgment to be passed is to prostrate his rights; and on the subject of these rights, the constitution exempts him from the jurisdiction of the state tribunals, *without regard to the place where the contract may originate.* In the only tribunal to which he owes allegiance, the state insolvent or bankrupt laws cannot be carried into effect." He subsequently adds:—" when in the exercise of that power," (passing insolvent laws,) " the states pass beyond their own limits, and the rights of their own citizens, and act upon the rights of citizens of other states, there arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other states, and of the constitution of the United States."

Whether the decisions of the Supreme Court of the United States, prior to 1826, were in that year carefully examined by the judges of this court, does not distinctly appear; but in 1831, the Circuit Court of the United States for Pennsylvania, in the case of Woodhull *v.* Wagner, 1 *Bald. Rep.* 296, very elaborately reviewed the whole series of cases in the Supreme Court, and the two learned judges, *Baldwin* and *Hopkinson,* concurred upon what they called the *settled principles* of the Supreme Court of the United States, in refusing to recognise a discharge under the insolvent law of Pennsylvania, where the defendant, a resident of Pennsylvania, contracted a debt payable in New York to citizens of New York. The city of New York being the place where the debt was payable, and the plaintiffs being citizens of the state of New York, it was held that " the discharge of the defendant by the insolvent laws of Pennsylvania, could have no operation on the contract or the remedies to enforce performance." It was upon the same

[Mount v. Bradford.]

ground, and with reference to this train of decisions in the courts of the United States, that in the case of McMackin *v.* Hamilton, in May, 1835, this court, composed of the present judges, adhered to the authority of Walsh *v.* Nourse, and refused to give effect to a discharge obtained in the District of Columbia, the debt having been contracted in Philadelphia, and the plaintiff being a citizen of Pennsylvania.

The same reasons, however, which induced the Circuit Court of the United States for Pennsylvania, to inquire as to the place where the contract was to be executed, and where the parties resided, are sufficient to prove that where both parties reside and the debt was contracted in the state in which the discharge was obtained, the discharge would be held valid to precisely the same extent as within that state. This, too, is in accordance with what Chief Justice Tilghman, in Walsh *v.* Nourse, states to be the true principle, to wit, " that every state has power over the persons residing within its territory, and therefore, where a debt is discharged by the law of a state in which both plaintiff and defendant reside, another state ought to pay regard to it;" a position which is independent of the doctrine of mere reciprocity or comity. See also Walsh *v.* Farrand, 13 *Mass. Rep.* 19, to the same effect.

It may be remarked that Woodhull *v.* Wagner, 1 *Baldwin*, was determined before Boyle *v.* Zacharie, 6 *Peters.* If the declaration made by Judge Story, in 6 *Peters* 643, that the final opinion of Judge Johnson in Ogden *v.* Saunders, was concurred in and adopted by three other judges, and that the decision was to be deemed final and conclusive, had been uttered before the adjudication of Woodhull *v.* Wagner, it might have been a question whether the Circuit Court of the United States for Pennsylvania, would not have been authorized to narrow the ground of their opinion in the last mentioned case, and to have confined it to the mere fact of the place of residence of each party. It is clear, however, that as the *facts* give them the broader ground, they did not assume the restricted one.

In the case before us then, as the contract was made in the District of Columbia, to be executed there, and the parties resided there at the date of the contract, and at the time of the discharge, the discharge is to be regarded, unless the fact that judgment

[Mount v. Bradford.]

was obtained in Pennsylvania, before the date of the discharge, prevents this conclusion.

Upon principle, no good reason can be suggested why this circumstance should make a difference. Were this allowed indeed, the effect, on the contrary, might be to confer upon a citizen of another state, suing here a citizen of his own state during a temporary visit, and obtaining a judgment against him, an advantage which our own citizens would not possess in regard to each other. The case before us furnishes a full illustration. In the District of Columbia, where this contract was made, and where both parties reside, the judgment in Pennsylvania would not be allowed to defeat the discharge. As between two of our own citizens, a judgment here would not control a discharge obtained here— there is then no sound reason why the force now claimed for this judgment should be accorded to it. In acknowledging the validity of the discharge at all, as to contracts made within the territory of the state granting the discharge, and between parties resident there, the true principle is to yield to it the precise extent and effect which is allowed to it by that state itself. If this principle be departed from, it would be better to adopt, at once, the rule of the New York cases, (2 *Johns.* 198; 11 *Johns.* 194; 3 *Cowen* 626,) and utterly reject, in every instance, the discharge obtained in another state, no matter where the contract originated, nor of what state or states the parties were citizens; a rule, however, which is equally opposed to the true principles of general jurisprudence, and to the current of decisions in the United States courts.

The fact of obtaining a judgment ought then to be entirely disregarded. Accordingly we find, notwithstanding any thing which may have been said in Green *v.* Sarmiento, 3 *Wash. C. C. Rep.* 17, that in the whole train of cases in the Supreme Court of the United States, no effect whatever is referred to such a circumstance, nor is any allusion made to a distinction founded upon it. So far as relates to this question, therefore, Green *v.* Sarmiento cannot be held to be law. In the case of Woodhull *v.* Wagner, in the Circuit Court before cited, judgment had been obtained eleven months before the discharge under the insolvent law of Pennsylvania: and yet this was not deemed to be an extinguishment of the original contract, but the court felt themselves called upon to investigate a complicated state of facts, and ascertain where the debt was originally payable, and where the parties

[Mount v. Bradford.]

resided. In an earlier case, Thibault v. Basavilbaso, 1 *Bald. 9*, in which Judge Hopkinson, holding the Circuit Court of the United States, allowed an exoneretur to be entered on the bail-piece, the defendant having been discharged under the insolvent law of Pennsylvania, that eminent judge had also disregarded the circumstance of the entry of a judgment, and inquired fully into the character and place of the original contract. However true it may be then, that for some purposes a judgment extinguishes the original contract, yet it is not now to be considered, that as regards the effect of a discharge under the insolvent laws of a state, or of the District of Columbia, such force is to be given to it.

According to the case of Boggs v. Bancker, 5 *Binn.* 507, the bail should pay the costs of the *scire facias.* Upon this being done, the rule will be made absolute.

Rule absolute.